193 So. 671

**WETHERBEE v. LODWICK LUMBER CO., Inc., et al.**

No. 35491.

Jan. 9, 1940.

Rehearing Denied Feb. 5, 1940.

Appeal from Twenty-Sixth Judicial District Court, Parish of Bossier; J. F. McInnis, Judge.

Suit by George W. Wetherbee against the Lodwick Lumber Company, Incorporated and others to set aside a sheriff's sale of land under a writ issued pursuant to a partition judgment, in which Mrs. Florence I. Wetherbee and others intervened. From the judgment rendered, all parties appeal.

Herold, Cousin & Herold, of Shreveport, for George W. Wetherbee, plaintiff, appellant and appellee.

Cook, Cook & Egan, of Shreveport, for Lodwick Lumber Co., defendant and appellant.

Albert P. Garland, of Shreveport, for Mrs. Florence I. Wetherbee, Mrs. Nettie L. Bliss, and Miss Helen E. Bliss, defendants in call in warranty.

S. W. Plauche, of Lake Charles, and Lee & Lee, of Shreveport, for Continental American Bank & Trust Co. and Continental Securities Corporation.

Parsons & Hunter, of Mansfield, and Marlin Risinger, Jr., of Shreveport, for M. Risinger, defendant and appellant.

ODOM, Justice.

The Lodwick Lumber Company purchased at public sale made on October 6, 1934, a large tract of land in Bossier Parish and paid therefor $82,500. The sale was made by the sheriff under a writ ordering him to sell the property to effect a partition thereof. The lumber company recorded its deed in the conveyance records of the parish and immediately took possession.

The writ of sale under which the sheriff acted was issued pursuant to a judgment rendered on April 23, 1934, in a suit for partition, styled Continental Securities Corporation v. George W. Wetherbee (Risinger, Intervener), decreeing: "That there be judgment herein in favor of plaintiff, Continental Securities Corporation, and of M. Risinger, Intervener, and against the defendants, recognizing the said Continental Securities Corporation, and the said M. Risinger, Intervener, to be the owners in indivision, in the proportion of an undivided one-half (½) interest each" in the property sought to be partitioned, and further decreeing that the property be sold at public auction to effect a partition.

A detailed statement of the facts and circumstances leading up to the suit for partition and the issues involved in that litigation was made by us in our original opinion and reiterated chronologically in our opinion on rehearing in the case of Continental Securities Corporation v. Wetherbee, reported in 187 La. 773, 175 So. 571. While the facts and issues involved in that litigation, as stated by us in those opinions, are pertinent to the issues involved in the present suit, we shall not restate them here, but refer to them later in this opinion as occasion arises.

It should be stated here, however, that the same George W. Wetherbee, who was defendant in that partition suit, is plaintiff in the present suit. In the partition suit his defense, in sum, was that the plaintiff, Continental Securities Corporation, had no title to the one-half interest in the land which it claimed. In that suit the title to the respective interests in the property claimed by the parties to the suit was the major issue involved and had to be decided before the partition was ordered. That issue was decided, and it was held by the trial court that the plaintiff, Continental Securities Corporation, owned an undivided one-half interest in the property and that Risinger owned the other one-half interest.

Wetherbee, the defendant in the partition suit, did not appeal suspensively from the judgment ordering the property sold, and that judgment therefore became executory ten days after it was signed.

On April 11, 1935, eleven and a half months after the judgment was rendered, Wetherbee petitioned for, and was granted, a devolutive appeal to this court, which appeal was perfected. But on October 6, 1934, approximately six months before the appeal was applied for and about five months after the partition judgment became executory, the Lodwick Lumber Company, defendant in the present suit, purchased the property at public sale made to effect the partition.

When the case finally reached this court on Wetherbee's devolutive appeal, the judgment recognizing the Continental Securities Corporation's title to one-half interest in the property, and ordering the same sold to effect a partition, was reversed, and it was decreed that the foreclosure proceedings under which the Securities Corporation claimed to have acquired title in 1933 were null and void. But our decree reversing the judgment was handed down long after the sale to effect the partition took place, and was made several months after Wetherbee applied for, and was granted, the devolutive appeal.

On rehearing in the case cited above, we held that the Lodwick Lumber Company obtained valid title to the land, but reserved Wetherbee's right to apply for a rehearing. He applied for a rehearing and alleged that the court erred in holding that the lumber company acquired valid title, because it was not a party to the suit, and that, if the judgment were permitted to stand, he would lose his constitutional right to attack the sale. He further alleged on information and belief that the sale was null because of certain transactions which took place between the Continental Securities Corporation, the plaintiff in the suit for partition, and the Lodwick Lumber Company, the purchaser of the property at the partition sale, which transactions amounted to a fraud upon his rights, and that, if permitted to do so, he could prove that the public sale at which the lumber company became the purchaser of the property was tainted with fraud and therefore should be set aside.

We refused the rehearing with a per curiam, in which we said that, the charges of fraud made by Wetherbee in his application for rehearing not having been involved in the suit before us, we could not decide in that case what effect such charges, if made in a proper proceeding and proved, would have on the lumber company's title to the land.

The present suit by Wetherbee against the Lodwick Lumber Company and others followed. He here attacks the sale in a direct action and asks that it be set aside, at least to the extent of the undivided one-half interest which the Securities Corporation claimed to own. The first seven articles of plaintiff's petition relate mainly to the defenses which Wetherbee made to the suit for partition, which were that said corporation never owned any interest in the land because the foreclosure proceedings under which it claimed to have ac-

quired a one-half interest were null and void. It is not necessary to refer to these allegations further than to say that Wetherbee's defense in the partition suit was sustained by this court, as stated above.

The grounds on which the plaintiff now attacks the sale made to the Lodwick Lumber Company are set out principally in his application for a second rehearing in this court, and he makes those allegations a part of his petition in this case "as fully and to the same extent as if the same were copied in extenso in this petition." In his application for a second rehearing, Wetherbee charged on information and belief that the Continental Securities Corporation induced the Lodwick Lumber Company to bid for the property upon an agreement that it would lend to, or procure for, the lumber company the funds with which to pay for the interest of M. Risinger in the property; that the consideration of the loan was an agreement on the part of the Lodwick Lumber Company that it would convey to the Continental Securities Corporation an undivided one-half interest in the minerals in and under the said property in case it became the purchaser; that the deal was consummated by the execution of a mortgage in favor of the Continental American Bank & Trust Company "almost contemporaneously with the sheriff's deed", and by the execution on October 16, 1934—this was ten days after the sale—of an act of sale from the lumber company to the Securities Corporation and the bank, of an undivided one-half interest in the minerals.

It was further alleged that the Lodwick Lumber Company knew of Wetherbee's claim to the property at the time of the sale, and further alleged that there was read to those assembled at the time the property was auctioned by the sheriff a notice prepared by Wetherbee's attorneys "notifying and warning all parties intending to bid on the property of the pendency of the claim of Wetherbee and the nature of his claim, and warning all parties not to bid on said property". It was further alleged that J. Homer Jordan was president of the Continental Securities Corporation and vice-president of the Lodwick Lumber Company. It is further alleged that these deals between the Lodwick Lumber Company, the Securities Corporation, and the bank are in writing, and that they show that these parties "entered into some kind of collusive agreement", and that said agreement amounts to a fraud upon Wetherbee and upon the court.

In addition to the above allegations, plaintiff alleged in the present suit "(a) that the Lodwick Lumber Company, Inc. had full and complete knowledge at the time of its bid on said property at the partition sale of the pendency of petitioner's claim to the property and of his suit therefor, and of the pendency of the appeal therein; (b) that at the sheriff's sale, and prior to the offering of the property by the Sheriff, there was read to those there assembled—including the representative of the Lodwick Lumber Company, Inc. who bid for the same, a notice prepared by the attorneys for petitioner stating the existing situation with reference to the suit, and warning all parties intending to bid on the property not to bid because of the pendency of petitioner's judicially asserted claim thereto; (c) that as stated in

the petition for second rehearing, the Lodwick Lumber Company, Inc. bid for the said property under a previous agreement with the Continental Securities Corporation, and for those purposes of the latter corporation set out in the petition for rehearing".

The plaintiff prayed for judgment recognizing him to be the owner of an undivided one-half interest in all of the lands, and prayed for judgment "decreeing null and void the aforesaid partition sale of date October 6, 1934, * * * and likewise decreeing null and void that certain sheriff's sale of date August 5, 1933"; and further prayed for judgment reserving to him all his rights to sue for the nullity of the foreclosure proceeding in the suit of Abel Bliss v. George Wetherbee, and of the adjudication to M. Risinger therein.

Plaintiff amended his petition, alleging that on October 16, 1934, the Lodwick Lumber Company executed an act conveying to the Continental American Bank & Trust Company and the Securities Corporation certain interests in the minerals in and under the lands for the purported consideration of $500, but that the true consideration was an agreement entered into between the parties at the time the Lodwick Lumber Company purchased said property for itself and for the vendees, the said act transferring an interest in the minerals; and prayed that the Securities Corporation and the bank be made parties defendant.

In a second amended petition, plaintiff prayed that M. Risinger be made a party defendant.

Before answering, the Lodwick Lumber Company excepted to plaintiff's petition on the ground that it set out no cause or right of action against it. This exception, after hearing, was overruled by the court. Other exceptions and pleas were filed, but it is unnecessary to mention them here. It filed answer, in which it admitted that it had knowledge, at the time of its bid on the property, of petitioner's claim, but that the judgment ordering the partition sale had become executory long prior thereto. It admitted that there was read at the offering a notice prepared by attorneys for petitioner, in effect warning parties not to bid for the property. It admitted also that it had entered into an arrangement with the Securities Corporation and the bank to borrow the money with which to make the purchase, and that it had subsequently executed a mortgage on the property to secure the amount borrowed, and that it had executed a deed transferring to the corporation and the bank certain interests in the minerals. But it specifically denied that any fraud was practiced upon Wetherbee, and denied that it was a purchaser in bad faith, and specially set up that it had obtained good and valid title to the property.

The Continental Securities Corporation and the Continental American Bank & Trust Company, made defendants, filed separate answers, in which they made substantially the same defenses as those set up by the Lodwick Lumber Company.

There were several calls in warranty and interventions, which need not be referred to here, but which will be discussed later in this opinion if found necessary.

There was judgment recognizing the plaintiff Wetherbee as owner of an undivided one-half interest in the property, and annulling to that extent the sale made by the sheriff to the Lodwick Lumber Company in the partition suit, and annulling in toto the foreclosure by Continental Securities Corporation against Wetherbee, and reinstating the mortgage of Continental Securities Corporation previously foreclosed, and ordering a new foreclosure thereon. (As to the facts relating to the mortgage and foreclosure, see original opinion and opinion on rehearing in the suit of Continental Securities Corporation v. Wetherbee, 187 La. 773, 175 So. 571).

There were other orders and decrees, which need not be recited here.

From this judgment all parties appealed.

It is needless to cumber this opinion with the recital of the facts and circumstances leading up to. the rendition of the judgment on April 23, 1934, recognizing the Continental Securities Corporation and M. Risinger to be the owners in indivision, one-half each, of the property here involved and ordering it sold to effect a partition. Those facts and circumstances, as well as the issues raised and decided in that suit, are discussed in our opinion in the Wetherbee suit referred to above. The major issue raised in this suit which we must decide is whether the Lodwick Lumber Company obtained valid title to the land and the mineral rights in controversy at the public sale made pursuant to the judgment ordering the sale. If it did not, there are numerous other issues which we must decide. If it did, some of the other issues pass out of the case.

■ The judgment ordering the sale to effect a partition of this property was rendered on April 23, 1934. That judgment was against Wetherbee, who is plaintiff in the present suit. He did not appeal suspensively from the judgment. It therefore became executory ten days after it was signed. Code of Practice, Article 578; Bomarito v. Max Barnett Furniture Co., 177 La. 1010, 150 So. 2. · In Factors' & Traders' Insurance Co. v. New Harbor Protection Co., 37 La.Ann. 233, this court said:

"After judgment and expiration of delay for suspensive appeal, the party cast preserves the right to appeal devolutively within one year; but all power to oppose or prevent the execution of the judgment is lost."

This court has held in several fairly recent cases that the taking of a devolutive appeal implies the right to have the judgment appealed from executed pending the appeal, and the obligation to refund. Citizens' Bank v. Bellamy Lumber Co., 140 La. 497, 73 So. 308; Dyer v. Mountz, 157 La. 316, 102 So. 413; Mountz v. Dyer, 158 La. 383, 104 So. 123.

■ The judgment ordering the property sold to effect a partition thereof was signed on April 23, 1934. Some five months after the judgment ordering the property sold to effect a partition, the clerk of court issued a writ commanding the sheriff to seize and, after due advertisement, sell the property at public auction. The sheriff executed the writ as directed, and the Lodwick Lumber Company, the defendant herein, became the purchaser on October 6, 1934.

About six months after the sale was made, Wetherbee, the defendant in the suit for partition, took a devolutive appeal to this court. The judgment appealed from was reversed in June, 1937. But the reversal of the judgment did not affect the title acquired by the Lodwick Lumber Company, a third person. It is not contended now, nor has it ever been, that the court which rendered the judgment was not vested with jurisdiction, nor is it contended that all the forms and requisites for making such judicial sales were not complied with. It is conceded that all interested persons were made parties to the suit for partition.

If any point can be settled by jurisprudence, it is this, that a sale made by virtue of a judgment rendered by a court of competent jurisdiction, after the judgment becomes executory and after compliance with all the forms and requisites prescribed by law for making judicial sales, becomes fixed and absolute, and the rights acquired by a purchaser at such sale are not divested by a subsequent reversal of the judgment on devolutive appeal. Or, stated in other words, the validity of sales made in the execution of judgments after they become executory is not affected by a subsequent reversal of the judgment on devolutive appeal.

The reason underlying this rule was stated by Judge Porter, more than one hundred years ago, in the case of Baillio v. Wilson, 5 Mart.,N.S., 214, to be this, that "The destruction of a power does not carry with it the destruction of the effects which, that power, when in force, may have produced".

Judge Porter gave this illustration of the point: "If an agent should sell a tract of land under a power of attorney, a subsequent revocation of that power would surely not annul the sale that was made under it." We might give another illustration by referring to the familiar and well recognized rule that rights acquired under a valid statute are not divested by the subsequent repeal of the statute.

Judge Porter said in the course of his opinion that "Execution is quaintly, but truly, called the life of the law". A judgment would be worthless if the one in whose favor it was rendered had no power to execute it. One against whom a judgment is rendered may suspend its execution pending appeal, but to do so he must comply with the requisites of the law. Code of Practice, Article 575. If the party cast in the judgment fails to protect his rights by suspending the execution of the judgment in the manner prescribed by law, he cannot undo that which was done by virtue of the judgment while it was executory. In the Baillio case, cited supra, it was held, to quote Paragraph 2 of the Syllabus, that "When the appeal does not stay execution, the reversal of a judgment in the appellate court does not avoid the sale made under an execution issuing from the inferior court in virtue of the judgment". This court has consistently adhered to that rule down to the present time. Hartson v. Flaty et al., 192 La. 782, 189 So. 134; Continental Securities Corporation v. Wetherbee, 187 La. 773, 175 So. 571; Jefferson v. Gamm, 150 La. 372, 90 So. 682; King v. Hardwood Mfg. Co., 140 La. 753,

73 So. 853; Citizens' Bank of Columbia v. Bellamy Lumber Co., 140 La. 497, 73 So. 308; State National Bank v. Lanaux, 46 La.Ann. 467, 15 So. 59; Pasley v. McConnell, 38 La.Ann. 470; Factors' & Traders' Insurance Co. v. New Harbor Protection Co., 37 La.Ann. 233; Taylor v. Lauer et al., 26 La.Ann. 307. These are but a few of the cases which might be cited in support of the rule first announced in the Baillio case, supra.

There is no merit in the suggestion that the above stated rule applies only to sales made in the execution of money judgments or sales under writs of fieri facias. The rule applies as well to sales made pursuant to judgments ordering real estate sold to effect a partition. The rule applies to all judicial sales. We so held, in effect at least, in our opinion on rehearing in the case of Continental Securities Corporation v. Wetherbee, supra. In the case of Hartson v. Flaty et al., decided in May, 1939 (192 La. 782, 189 So. 134, 136), the real estate involved was sold at public auction to effect a partition after the judgment of the district court ordering the sale had become executory, just as in this case. But there, as here, the judgment of the district court ordering the sale was annulled after the sale was made, and we held that the purchaser obtained valid title which was not affected by the subsequent judgment which annulled the first one, citing among others the Wetherbee case. In the Flaty case we said:

"The judgment annulling the judgment of partition does not set aside that judgment insofar as it authorized the sale of the property. It only affects the distribution of the proceeds of the sale."

That case is on all fours with this one.

Judicial sales are such as are made by authority of law. A sale of real estate made pursuant to a judgment ordering it partitioned by licitation is a judicial sale. According to Article 2616 of the Revised Civil Code, which article is found under the title "Of Judicial Sales", judicial sales are of two kinds:

"1. Those which take place when the property of a debtor has been seized by order of a court, to be sold for the purpose of paying the creditor.

"2. Those which are ordered in matters of succession or partition."

A judicial sale is made pursuant to a judicial mandate. The mandate is executed by the sheriff or some other officer charged with that duty, who seizes and sells the property at public auction to whoever will give the highest price. Civil Code, Articles 2601, 2618. Such sale is made to effectuate the mandate, and it matters not whether property is seized and sold for the purpose of paying a creditor or for the purpose of effecting a partition by licitation. The rule which applies to the one applies to the other. A sale to effectuate the mandate of the court "transfers the property of the thing to the purchaser as completely as if the owner had sold it himself". Civil Code, Article 2620.

In the Wetherbee case, supra, it was argued, as here, that the doctrine first announced in the Baillio case, supra, and clearly set forth in the case of Jefferson v.

Gamm, supra, was applicable only to cases where property was sold under writs of fieri facias. In commenting, we said there was a "distinction" between the execution of money judgments and judgments where title to property is originally contested by the litigants. But, by saying that there was a "distinction" between such judgments, we did not intend to hold that, in so far as the results of judicial sales were concerned, there was any difference.

The grounds on which plaintiff bases his attack on the partition sale are (1) that defendant was not an innocent purchaser and therefore took the property at his peril, because he had "actual notice" of Wetherbee's claim when he bid in the property, and (2) that the Lodwick Lumber Company entered into collusion with the Continental Securities Corporation and the Continental American Bank & Trust Company to deprive Wetherbee of his property, and that the various and sundry manipulations to which the lumber company was a party amounted to a fraud against the plaintiff.

There is no merit in the first ground of attack. It is true, as alleged, that, at the time the property was bid in by the defendant, those who represented the purchaser were notified that Wetherbee had not abandoned his claim of ownership. Before the sheriff auctioned the property, a statement was read in the presence of the bystanders and prospective bidders, proclaiming that Wetherbee claimed the property and warning all parties not to purchase. Not only that, the record makes it clear that the officers of the lumber company knew prior to that time that, although Wetherbee had not taken a suspensive appeal within the time prescribed by law, his time for prosecuting a devolutive appeal had not expired. Because this is true, counsel for Wetherbee argue that this case is governed by the rule laid down in Article 2453 of the Revised Civil Code, which provides that:

"The thing claimed as the property of the claimant can not be alienated pending the action, so as to prejudice his right. If judgment be rendered for him, the sale is considered as a sale of another's property, and does not prevent him from being put in possession by virtue of such judgment.

"Nor shall it be lawful for debtors or third possessors of property, subject to a mortgage of any kind, to transfer or alienate such property, pending an action to enforce the mortgage, and any transfer or alienation made in contravention of the provisions of this article, shall have no effect as against the plaintiff, or plaintiffs, in such pending action."

In the case of Continental Securities Corporation v. Wetherbee, supra, Wetherbee filed notice of lis pendens under Act No. 22 of 1904, two days after the judgment ordering the property sold to effect the partition was signed. We held on rehearing that the notice was filed too late and for that reason did not serve as "constructive notice to all the world" [187 La. 773, 175 So. 582] that plaintiff was claiming the property, and that the Lodwick Lumber Company had acquired valid title thereto. In that case we followed prior

cases decided by this court, holding that Article 2453 of the Civil Code, which was the law on the subject prior to the adoption of Act No. 22 of 1904, "made the mere filing of the suit (affecting title to real property) constructive notice to all the world that the plaintiff claimed the property, and thus charged every one, however innocent, with knowledge of that fact, with the ensuing consequence that he then purchased at his peril, even 'though * * * there was no outward sign of defect in the title' of this vendor". Citing Richardson Oil Co. v. Herndon, 157 La. 211, 102 So. 310. We held that the filing of the notice of lis pendens, as provided by the act of 1904, served the same purpose as to constructive notice to third persons as did Article 2453 of the Code prior to the adoption of the act.

But counsel argue that, even though the filing of a notice of lis pendens too late does not convey "constructive" notice to all parties that the thing is "claimed as the property of the claimant", nevertheless one who purchases at a judicial sale, under such circumstances as are here disclosed, with "actual notice" of the claim is not an innocent purchaser, the ensuing consequence being that he purchases at his peril and the sale is null under Article 2453 of the Code.

The provisions of Article 2453 of the Civil Code have no application to a case of this kind. The sale in this case was made pursuant to a judgment which became executory—ripe for execution—months before the property was seized and offered for sale. At the time it was seized and offered for sale, no law stood in the way of the sale. On the contrary, the law specifically authorized it. The execution of the judgment ordering the sale had not been suspended. All issues involving title to the property had been determined by a court of competent jurisdiction in a suit in which all interested persons were parties. Under such circumstances, any person, no matter who, was entitled to purchase the land if he were willing to "give the highest price". Civil Code, Article 2601.

The settled jurisprudence of this state is that, in suits for partition of real estate, ownership is the basis of the action and must be alleged and proved, and that the defendant in such suit may inquire into the validity of the proceedings whereby plaintiff acquired title upon which he sues, because the question of title is necessarily involved; and further, that a decree of a court of competent jurisdiction in a suit for partition where all interested persons are parties concludes all parties on questions of title raised, or that might be raised, in the particular proceedings. Choppin et al. v. Union National Bank, 47 La.Ann. 660, 17 So. 201; Thibodeaux v. Thibodeaux, 112 La. 906, 36 So. 800; Metropolitan Bank v. Times-Democrat Pub. Co., 121 La. 547, 46 So. 622; Wells et al. v. Files, 136 La. 125, 66 So. 749; Bauman v. Pennywell, 160 La. 555, 107 So. 425; Aucoin v. Engeron, 165 La. 319, 115 So. 576.

Wetherbee was defendant in the suit which resulted in a judgment ordering the property sold to effect a partition. The plaintiff, Continental Securities Corpora-

tion, alleged that it owned an undivided one-half interest in the land, having acquired the same at sheriff's sale under executory process on August 5, 1933. Wetherbee, in answer, denied that plaintiff owned any interest in the property, and, assuming the position of plaintiff in reconvention, attacked the sheriff's sale, the basis of plaintiff's title, alleging that the sale was null on grounds specifically set out. The trial judge ruled against Wetherbee on all points, specifically holding that plaintiff's title was good, and ordered the property partitioned by licitation. The execution of that judgment not having been suspended by Wetherbee, the party cast, there was no need for bidders at the sale to look beyond the decree of the court to learn who owned the property or who had laid claim to the ownership. Those issues were settled by the decree.

The fact that the purchaser at the sale had actual knowledge that Wetherbee had asserted, and was still asserting, claims to the property did not affect the validity of the sale. In a number of cases decided by this court, where property was purchased at judicial sale and the judgment under which it was sold was later reversed on devolutive appeal, the purchaser was a party to the original suit. And yet the court refused to disturb the sale. Pasley v. McConnell, 38 La.Ann. 470, is similar in some respects to the case at bar. In that case Mrs. McConnell, a party to the suit, purchased the property at judicial sale. The court said "She had the right, under the law, to execute her judgment and to become the purchaser at the sale".

A like situation appears in Farrar v. Stacy, 2 La.Ann. 210, and in McWaters v. Smith, 25 La.Ann. 515. In these cases a party to the original suit in which the judgment ordering the sale was rendered became the purchaser of the property. In each of the cases the judgment ordering the sale was reversed on devolutive appeal, but the court held that the sale was not affected by the reversal of the judgment. See also Citizens' Bank of Columbia v. Bellamy Lumber Co., 140 La. 497, 73 So. 308. Parties to law suits necessarily have actual knowledge of the claims asserted by their adversaries. And yet they may purchase at judicial sales which they bring about. At judicial sales the property may be purchased by anyone who will pay the highest price, and, even though the purchaser knows that some disappointed litigant is still claiming the property, such knowledge does not place him in the category of a purchaser in bad faith. That is precisely what we held in the case of Hartson v. Flaty, supra. In that case, as in this one, it was announced at the sale by the attorney for the defendant that the judgment ordering the sale was of doubtful validity, which was notice to bidders that there might be litigation over the title which might be acquired. But we held that such knowledge did not affect the sale, for the reason that the purchaser had a right to rely upon the judgment. This doctrine is recognized generally. See "Judicial Sales", 16 R.C.L., p. 27, § 21, under the subheading "Reversal of Decree"; same subject, 35 C.J., p. 81, § 126.

To hold that titles acquired at judicial sales are affected by the purchaser's

knowledge that a disappointed litigant is still claiming an interest in the property would be wholly inconsistent with the principles laid down in the codes and repeatedly announced by this court, that, when a judgment becomes executory, it is subject to execution by the party in whose favor it has been rendered and that titles acquired at such sales are valid even though the judgment ordering the sale is subsequently reversed on devolutive appeal. If an announcement at a judicial sale by the party cast that he still claims the property offered has the legal effect that counsel argue it has, such announcement would, in effect, serve the purpose of a suspensive appeal. It would render the right to execute judgments of little value and seriously affect the stability of titles acquired at judicial sales.

The case on which counsel rely principally to support their theory is Richardson Oil Co. v. Herndon, 157 La. 211, 102 So. 310, but that case has no application here. The reason clearly appears from the opinion. There Herndon executed an oil lease to Dunson. Two months later, Herndon sued Dunson to set aside the lease. No notice of lis pendens was recorded under Act No. 22 of 1904. While Herndon's suit against Dunson was pending in the district court, he again leased the same land to R. T. Layne. Five days later Herndon's demands against Dunson were rejected by the district court, and on the same day he appealed. While Herndon's suit against Dunson was still pending, one S. P. Harrell acquired the lease made by Herndon to Dunson, and a short time thereafter entered into a contract with a drilling company to develop the land covered by the lease, the consideration for the sublease and contract being that the drilling company should obtain the dismissal of the appeal taken by Herndon. Harrell, who had acquired the Dunson lease, assigned it to the Richardson Oil Company, the contract of assignment stipulating that the Richardson Oil Company would protect Harrell against the contract made by him with the drilling company for the development of the lease. Harrell knew at the time he acquired the Dunson lease that the title to the thing acquired—i. e., the lease—was then in litigation and was still being claimed by Herndon, and, as said by the court, he "voluntarily interjected himself into said suit between Herndon and Dunson, by requiring the Clark & Greer Drilling Company to obtain the dismissal of Herndon's appeal". As to the Richardson Oil Company, the court said it "acquired the lease from said Harrell, taking cognizance at the time of the contract between him and said Clark & Greer Drilling Company, which contained the obligation on their part with respect to the suit pending between Herndon and Dunson; and thus voluntarily became a party to said contract by (in effect) assuming Harrell's obligation thereunder". The court said: "Plaintiff had therefore knowledge of the Herndon suit when it acquired the lease from Harrell; and was bound to take notice that, on the very day before, Layne had taken an appeal therein." The court said that it was clear that the Richardson Oil Company meant to, and did, take the

risk of developing the lease regardless of said litigation.

The court held that Act No. 22 of 1904 had no application but that Article 2453 of the Code did apply. The reason is plain. Harrell acquired the Dunson lease evidently by conventional assignment before the controversy between Herndon and Dunson was decided by the court, and, as said by the court, Harrell voluntarily interjected himself into the suit. He did not purchase the property after the issues involved between Herndon and Dunson had been decided by the court. He bought the Dunson lease under an agreement that he would have Herndon's suit dismissed, and the Richardson Oil Company acquired from him with full knowledge of all the facts. The distinguishing feature between that case and the one at bar is this; in that case Harrell acquired the Dunson lease before the issues between Herndon and Dunson were decided and voluntarily interjected himself into the suit and thereby, in effect at least made himself a party to the suit. In the case at bar the Lodwick Lumber Company purchased the property at judicial sale after all issues between the Continental Securities Corporation and Wetherbee as to ownership had been decided by a court of competent jurisdiction and after that judgment had become executory.

Our conclusion is, and we hold, that the title acquired by the Lodwick Lumber Company is not invalid on the first ground of attack.

■ We think there is no merit in the second ground of attack, which is that the Lodwick Lumber Company perpetrated a fraud against Wetherbee. It is true, as alleged, that certain contracts were entered into between the Continental Securities Corporation, the Continental American Bank & Trust Company, and Lodwick Lumber Company prior to the date on which the property was to be sold. The Lodwick Lumber Company desired to purchase the property at the judicial sale. Apparently that company had not the funds with which to make the purchase. The agreement entered into between it and the Continental Securities Corporation was that, if the latter would make or secure for it a loan of sufficient funds with which to make the purchase, it would, as an additional inducement for making the loan, transfer to the Securities Corporation an interest in the minerals. The Securities Corporation induced the Continental American Bank & Trust Company to make the loan, and, as an additional inducement for the bank's making the loan, it was agreed that it should be given an interest in the mineral rights. These agreements were consummated after the lumber company had purchased the property at the judicial sale.

Such transactions are not unusual. The lumber company knew, of course, that the property was to be offered for sale and desired to purchase it. Its arrangements with the Securities Corporation and the bank for the funds with which to make the purchase did not amount to fraud in so far as Wetherbee's rights were concerned. The judgment ordering the sale was executory at the time the arrangement was made. The property was subject to forced

sale, and there was no way in which Wetherbee could stop the execution of the judgment. Every prospective purchaser had the right to make such arrangements as he saw fit to raise the money with which to make the purchase. By his failure to suspend the execution of the judgment Wetherbee lost his right to complain.

It was not alleged, nor is it now contended, that any fraud was practiced against Wetherbee in the suit between him and the Continental Securities Corporation, plaintiff in the original suit. The lumber company was not a party to that suit. The arrangements made subsequently with reference to the sale of the property, recited above, were not fraudulent in so far as the rights of Wetherbee were concerned.

 Counsel for Wetherbee argue that the lumber company did not acquire valid title to the land, because, at the time it purchased at the judicial sale, it then owned an undivided one-half interest in the property, having purchased the same previously from the Continental Securities Corporation. It appears that the corporation did execute a deed conveying a one-half interest in the property to the lumber company, which deed was not recorded, but the plaintiff did not attack the sale on that ground. Nowhere in Wetherbee's pleading was it alleged that the Lodwick Lumber Company acquired title by conventional sale from the Continental Securities Corporation. Wetherbee did not allege that the partition sale failed to transfer Wetherbee's title to the lumber company because of this prior unrecorded conventional sale. When Wetherbee sought to introduce the deed, its introduction was objected to on the ground that it would enlarge the pleadings. This objection was sustained by the trial court, and, we think, correctly so.

In Hope v. Madison, 192 La. 593, 188 So. 711, 714, we said that "one who comes to court with a complaint must so word his petition as to leave no reasonable doubt as to what he claims and why he claims it. The pleader must state clearly and concisely not only what he demands, or 'the object of the demand', but why he demands it, or, as the Code says, 'the cause of action on which it is founded'". We assigned as a reason for this that, in the absence of such a clear and concise statement of what the pleader demands and why he demands it, his adversary would be taken by surprise and come to court wholly unprepared.

 It is contended by counsel for Wetherbee that, if it be held that the Lodwick Lumber Company acquired good title to an entire interest in the land itself, it should be further held that it did not acquire title to the mineral rights. In our opinion on rehearing in the case of Continental Securities Corporation v. Wetherbee, we said:

"In our original opinion we held that the mortgage which Wetherbee gave the bank did not include his mineral rights. We adhere to that holding. But that question, like the question of title to the land, was litigated before the court below. The judgment was against Wetherbee on all points. For the reasons stated herein, our reversal of the judgment did not restore his title to the land, and for the same reasons it did not restore to him the mineral

rights. He lost title to both the land and the mineral rights."

We adhere to that ruling. The question whether the Continental Securities Corporation acquired the mineral rights at the foreclosure sale in 1933, which was the basis of its title, was one of the issues involved in the suit for partition. In that suit Wetherbee alleged and contended that the foreclosure proceeding and the ensuing sheriff's sale went beyond the provisions of the mortgage in not excepting therefrom the right of Wetherbee to produce oil from the premises. The meaning of the stipulation in the mortgage relating to the mineral rights was not free from all doubt. The mortgage in terms covered the land and all the buildings and improvements thereon, "including any and all oil wells, or any interest therein owned by said mortgagor, together with all equipment and appurtenances thereunto belonging". At the time the mortgage was executed, there were producing oil wells on the land and certain oil-well equipment, as well as a certain quantity of oil which had already been produced from the wells. The mortgage stipulated that it was agreed and understood that the act of mortgage "does not, in any way, affect or apply to the oil and/or gas which has been or may be produced from the above property, and that the said George W. Wetherbee shall have the right to sell said oil and/or gas and to collect and receive the proceeds thereof free from any lien, privilege, or incumbrance resulting from this mortgage". Whether it was intended that Wetherbee should retain his mineral rights generally, or whether he intended merely to reserve his right to continue to operate the wells then on the land and to sell such oil as they might produce and to sell that which had already been produced, was extremely doubtful. The language of the mortgage relating to the minerals was, to say the least, ambiguous. But the trial judge resolved the doubt against Wetherbee, holding that the Continental Securities Corporation acquired title to the minerals as well as to the land itself.

Referring again to the foreclosure proceedings, we find that the record shows that the sheriff seized and advertised the land for sale, nothing being said about the minerals. It was recited in all the proceedings that the land seized and sold was that which had been acquired by Wetherbee from N. E. Muggah in 1913, "together with the improvements thereon", and properties acquired by him from Simon Hamburg in 1910, "together with the improvements thereon". The sheriff's deed recited that the property conveyed by the sale was "all the right and title which the said George W. Wetherbee had in or to the said before described property".

On its face, therefore, the sale purported to convey to the purchaser the mineral rights as well as the land. The trial judge held that the Securities Corporation did acquire the mineral rights. That judgment was not invalid on its face, and the Lodwick Lumber Company had a right to rely upon it. Under repeated rulings of this court, a final decree of a court of competent jurisdiction in a partition suit concludes all parties on all questions of title raised,

or that might have been raised, in the particular proceeding. See cases cited supra on this point.

Our conclusion therefore is that the Lodwick Lumber Company acquired good title to the entire interest in the land, including the mineral rights.

There was judgment in the lower court, recognizing Wetherbee as the owner of an undivided one-half interest in all of the property purchased by the Lodwick Lumber Company at the partition sale; annulling and setting aside the sale to the Lodwick Lumber Company, annulling and setting aside the foreclosure proceeding by the Continental Securities Corporation against Wetherbee, under which the corporation claimed title to an undivided one-half interest in the property, and reinstating the mortgage against the undivided one-half interest in the property acquired by the corporation at the foreclosure sale, and ordering the one-half interest in the property seized and sold to satisfy the mortgage. The judgment to the above extent, except in so far as it annuls the foreclosure proceedings, is erroneous and must be reversed. In so far as the Lodwick Lumber Company is concerned, it obtained valid title to the entire interest in the property at the judicial sale, free from the mortgage above referred to, and is entitled to judgment quieting its title.

But, as between Wetherbee and the Continental Securities Corporation, Wetherbee is entitled to an accounting. In so far as Wetherbee's claim against the Securities Corporation is concerned, his claim is relegated to the proceeds of the judicial sale and to such revenues as the Securities Corporation may have derived from the property from the time it acquired the land at foreclosure sale in 1933 to the date of the judicial sale. In case an accounting is demanded, the Securities Corporation may, of course, offset Wetherbee's claims by its lawful claims against him.

The Securities Corporation was made defendant in the suit by the plaintiff, and in its answer made a reconventional demand against Wetherbee for quite a large sum. The trial judge did not pass on the question of what rights the parties might have on an accounting as between Wetherbee and the corporation, but liquidated the amount for which the mortgage should be reinstated against the one-half interest in the property, which was decreed to belong to Wetherbee. His decree goes no further than that. In as much as there may be a general accounting demanded as between Wetherbee and the Securities Corporation, we think the judgment in this respect should be set aside and that the rights of these parties to a future accounting, to be made in a separate proceeding, should be reserved.

Plaintiff asks in his pleadings that his rights be reserved to sue for and have adjudicated the nullity of the foreclosure proceedings in the suit of Abel Bliss v. George Wetherbee, and nullity of the title adjudication to M. Risinger therein, which was subsequently acquired by the Lodwick Lumber Company. Risinger was made a party to the suit and called in warranty by the Lodwick Lumber Company. As to this

point, the trial judge said "but on the trial of the case plaintiff admitted that any claims he had to set aside the sale to Bliss were barred by the Statutory prescription liberandi causa of two years, and this judicial admission disposes of that phase of the case. The title of Bliss and his successors in title, M. Risinger and Lodwick Lumber Co. is now clear to the half interest, so far as any claim that Wetherbee might have had to set that sale aside. This disposes also of the call in warranty against Risinger". His ruling on this point is correct.

The Lodwick Lumber Company in its answer to Wetherbee's suit made certain reconventional demands against him. Some of these demands were made in the alternative and only in event that it should be held that the Lodwick Lumber Company did not obtain valid title to the entire interest in the property. These demands must be rejected because we hold that the lumber company's title is good.

However, the Lodwick Lumber Company alleged that it was the holder and owner of certain promissory notes, amounting to $150,000, executed by George W. Wetherbee in connection with his purchase of an undivided one-half interest in the property from Abel Bliss in 1923, and it asks for personal judgment in reconvention against Wetherbee for the amount of these notes. Wetherbee resisted this reconventional demand on the ground that it was not necessarily connected with, or incidental to, the main demand, and that no personal judgment could be rendered on this reconventional demand because the plaintiff and defendants are residents of the same parish, Caddo, and not of the Parish of Bossier, where the suit was brought, and no action could be maintained for a money judgment on these notes except at the domicile of the plaintiff, Wetherbee. The court sustained the objection in so far as the demand for a personal judgment was concerned, but allowed the Lodwick Lumber Company to introduce the notes in evidence for the purpose of fixing the amount for which the mortgage should be reinstated in event the sale should be set aside.

The ruling of the trial judge was correct in so far as the demand for a personal judgment was concerned. Clearly the demand made by the Lodwick Lumber Company against Wetherbee did not grow out of, nor was it connected with or incidental to, the main demand made by Wetherbee, which was that the judicial sale made to the Lodwick Lumber Company be set aside and that Wetherbee be decreed to be the owner of an undivided one-half interest in the property. The notes involved were not given in connection with the undivided one-half interest in the property which Wetherbee was claiming. They were executed in connection with the other half interest therein, which was decreed to belong to M. Risinger by the judgment ordering the property sold to effect a partition. Wetherbee, Lodwick Lumber Company, Continental American Bank & Trust Company, and Continental Securities Corporation are all residents of the same parish, Caddo. Under Code of Practice, Article 375, it is only

in cases where the plaintiff resides out of the state, or in the state but in a different parish from the defendant, that defendant may institute a demand in reconvention against plaintiff for a cause not necessarily connected with, or incidental to, the main demand. The trial judge therefore correctly denied the lumber company's reconventional demand as to this item.

This disposes also of all reconventional demands made by the Continental Securities Corporation for personal judgment against Wetherbee.

The other reconventional demands made by the Securities Corporation pass out of the case because of our ruling that the title of the Lodwick Lumber Company is good and valid.

Mrs. Florence Wetherbee intervened in the suit, claiming that she owned the 15 notes, each for $10,000, executed by George W. Wetherbee in connection with his purchase from Abel Bliss of an undivided one-half interest in the land in 1923, these being the notes which the Lodwick Lumber Company alleged that it acquired from Bliss as per the so-called Lodwick-Bliss written contract entered into on March 5, 1935. Abel Bliss, who died after his agreement with Lodwick Lumber Company, was Mrs. Wetherbee's father, and she alleged that she had acquired the notes in a settlement of his succession.

As against the claim of the Lodwick Lumber Company that it owned the notes by virtue of the Lodwick-Bliss agreement, Mrs. Wetherbee alleged that the intent of the parties to that agreement was not that the ownership of the notes be transferred, but that they be delivered to, and held by, the lumber company in pledge for certain purposes, and further, that, if it be held that Bliss intended to sell the notes, the sale was invalid for want of consideration.

The trial judge held that the lumber company acquired valid title to the notes, and we think his ruling was correct. The agreement recites that the "party of the second part [Bliss] does by these presents sell, convey, quitclaim and deliver unto party of the first part [Lodwick Lumber Company] the fifteen (15) certain promissory notes made and executed by George W. Wetherbee, payable to the order of Abel Bliss, dated at Shreveport, Louisiana, June 26, 1923".

A reading of the agreement shows that the Lodwick Lumber Company bound and obligated itself to protect Bliss against any liability as warrantor under the deed of Bliss to Risinger in case Wetherbee should secure a reversal of the trial court's judgment in so far as it related to the foreclosure proceeding by Bliss against Wetherbee. For full account of this foreclosure proceeding, see case of Continental Securities Corporation v. Wetherbee, 187 La. 773, 175 So. 571. This was stipulated as the consideration for the sale of the notes. This, we think, was a valid consideration for the sale of the notes. It is true that Wetherbee never took an appeal from the foreclosure judgment by Bliss against him and that now there is no obligation from Bliss to Risinger and therefore the lumber company is relieved of the obligation which it assumed. But, at the time the agree-

ment was made, there was a possibility that the foreclosure proceeding referred to might be set aside, in which event the obligation which the lumber company assumed might have arisen. Mrs. Wetherbee alleged that, in as much as there is now no danger of the lumber company's having to protect Bliss on his obligation of warranty, the consideration for the transfer of the notes, if transfer it was, has failed. But there was a valid consideration at the time the transfer was made.

If the Lodwick Lumber Company should institute a separate proceeding against Wetherbee for the collection of the notes, Wetherbee would have the right, of course, to urge such defenses as the law allows him.

For the reasons assigned, the judgment appealed from is reversed and annulled (1) in so far as George W. Wetherbee is recognized as the owner of an undivided one-half interest in the land involved in this suit, together with all buildings and improvements thereon, including oil wells and equipment, and (2) in so far as it orders that the sale made by the sheriff of Bossier Parish on October 6, 1934, to the Lodwick Lumber Company, Inc., and the sheriff's deed made pursuant to the adjudication, be annulled, rescinded, and set aside in so far as such adjudication and sale purports to affect the undivided one-half interest in the property claimed by plaintiff, George W. Wetherbee, and (3) in so far as it orders the mortgage, foreclosed by Continental Securities Corporation in 1933, reinstated in all its terms and conditions, and (4) in so far as it or-

ders and decrees that the Continental Securities Corporation have judgment recognizing and ordering enforced the said special mortgage against the property and ordering that an undivided one-half interest in said property be seized and sold to satisfy said mortgage and the indebtedness for which said notes and mortgage were given, and (5) in so far as judgment was rendered in favor of the Lodwick Lumber Company, Inc., against George W. Wetherbee for $3,678.63 for taxes paid by it on the property, plus $289.40 paid for the preservation of the property.

And it is now ordered that there be judgment in favor of the Lodwick Lumber Company, Inc., the defendant, and against the plaintiff, George W. Wetherbee, rejecting plaintiff's demands against it, and further adjudged and decreed that the Lodwick Lumber Company, Inc., acquired good and valid title to the entire interest in all the property involved in this litigation, including all the mineral rights pertaining thereto, at the public sale made by the sheriff to effect a partition of the property on October 6, 1934, pursuant to the judgment ordering the sale thereof, signed April 23, 1934, free from the special mortgage covering the land executed by George W. Wetherbee on May 27, 1927, recorded in the mortgage records of Bossier Parish, and its title is now recognized and confirmed, and it is further ordered that its title to and its possession thereof be quieted.

The right of George W. Wetherbee to an accounting as between himself and the Continental Securities Corporation, as the law provides, is recognized and reserved.

It is further ordered that the judgment appealed from be affirmed in all other respects, the plaintiff Wetherbee to pay all costs.

LAND, J., absent.