CARLOS M. MOLINI ET AL., ETC., Plaintiffs and Appellees, *v.* SOCIEDAD MARIO MERCADO E HIJOS, Defendant and Appellant.

No. 10406. Argued July 8, 1952.—Decided October 11, 1952.

874

*Pedro M. Porrata* and *Jesús A. Cintrón Rivera* for appellant. *Pablo Defendini* for appellees.

MR. JUSTICE SNYDER delivered the opinion of the Court.

This is a suit for the collection of money filed in the former district court by a number of *colonos* against the defendant, the owner of a sugar mill at which the plaintiffs grind their sugar cane.

By an order of September 23, 1947 the Public Service Commission fixed the temporary rate to be charged by the defendant for grinding the cane of its *colonos*. This order provided that the said temporary rate would apply to the 1946 crop and to subsequent crops until the Commission fixed the permanent rate. The order also provided, as one of the conditions of the temporary rate, that the defendant was required to compensate its *colonos* for hauling and delivering their own cane at the rate of 15 cents per ton of cane plus 5 cents per kilometer-ton, not exceeding $1.00 per ton.

In 1947 the plaintiffs filed a complaint with the Commission alleging that during the 1945, 1946 and 1947 crop seasons the defendant had not paid them for hauling and delivering their own cane at the rate of 15 cents per ton plus 5 cents per kilometer-ton but rather had paid them at the rate of 15 cents per ton plus 3 cents per kilometer-ton. After conducting a hearing, in 1949 the Commission entered an order requiring the company to pay the plaintiffs the difference between the two rates. The company did not comply with this order. The plaintiffs thereupon filed suit and recovered judgment therefor against the defendant in the former district court, pursuant to § 27 of Act No. 221, Laws of Puerto Rico, 1942.[1] On appeal, we concluded that the plaintiffs

---

[1] Section 27 is similar to § 28 of the Public Service Commission Act, Act No. 70, Laws of Puerto Rico, 1917, Vol. II. Both sections permit the procedure followed herein by the plantiffs. They provide that in the former district court the order of the Commission shall be *prima facie*

should prevail as to 1946 and 1947, but not as to 1945. Consequently, instead of affirming the judgment, we reversed it and remanded the case to the lower court for recalculation of the sums due the plaintiffs.[2]

■■ We now have before us the defendant's motion for reconsideration which we entertained in order to consider certain contentions made by the defendant for the first time on reconsideration. The first of these new contentions is that the judgment of the lower court in favor of the plaintiffs should be reversed and that judgment should be entered for the defendant because the order of September 23, 1947 of the Commission fixing the temporary rate, on which this suit is based, has been declared null and void by the courts. In support of this argument, the defendant has filed with its motion for reconsideration a certified copy of a judgment of the former district court, dated November 20, 1951, which declares the order of September 23, 1947 null and void.[3]

The plaintiffs reply to this contention by arguing that the judgment of November 20, 1951 can have no effect on the present suit for collection of money because the defendant

---

evidence of the facts therein stated. See *Washington Terminal Co.* v. *Boswell*, 124 F. 2d 235, 241 (C. A., D. C., 1941) ; L.R.A. 1918 E 303, 312.

As this suit is based on the temporary rate order of September 23, 1947 of the Commission, and possibly another similar order, we are not concerned here with any agreements of the parties or any determinations of the Secretary of Agriculture of the United States.

[2] The claim for 1945 raises a separate problem as there is a dispute as to whether the order of the Commission requiring payment for the 1945 crop was predicated on the temporary rate order of September 23, 1947 or on some previous action of the Commission. The result we reach in this case makes it unnecessary to resolve this dispute.

[3] This judgment of November 20, 1951, the findings of fact and conclusions of law accompanying it, and the certificate of the Secretary of the lower court reflect the following facts: The defendant appealed from the order of the Commission to the former district court under § 78 of the Public Service Commission Act. The judgment of that court of November 20, 1951 has become final and unappealable. The lower court found that no proceeding was pending before the Commission to fix a permanent rate. It therefore entered judgment in favor of the defendant, relying on our holding in *Cía. Azucarera Toa* v. *Public Serv. Comm'n*, 71 P.R.R. 197, that the Commission may not fix a temporary rate until a proceeding to fix a permanent rate has been initiated.

failed to apply for and to obtain an interlocutory order of supersedeas during the pendency of the appeal to the former district court from the order of the Commission of September 23, 1947, pursuant to § 80 of the Public Service Commission Act.[4]   We cannot agree.   We find nothing in § 80 which makes supersedeas a prerequisite for review of an order of the Commission.   On the contrary, § 80 shows on its face that the Legislature meant merely to vary for this type of case the rule in ordinary suits in this jurisdiction that appeal automatically stays a judgment.   Section 297, Code of Civil Procedure, 1933 ed.   It therefore required supersedeas to stay orders of the Commission covered by § 80.   But if the appellant does not apply for a stay or if a stay is not granted under § 80, this means only that the prevailing party can take steps to enforce the order despite the pendency of the appeal.   *Monks* v. *Hemphill*, 203 P. 2d 503  (Colo., 1949) ;

---

[4] Section 80 reads as follows: "*Supersedeas on Appeal.*—No appeal from any order of the commission (except as hereinafter provided) shall in any case operate as a supersedeas of the order appealed from, unless the aforesaid proper court shall, by an interlocutory order, make said appeal as a supersedeas; which interlocutory order shall be made after such notice to the commission and other parties of record, and after a hearing upon said application for an interlocutory order of supersedeas. Upon the granting of a supersedeas upon the application of a public–service company in any case (except as hereinafter provided), the court may, in its discretion, require the filing of a bond in favor of The People of Puerto Rico, for the use of all parties aggrieved, in such sum and condition as the court may by its order direct, or may grant the supersedeas upon such other terms and conditions as the court in its discretion prescribes; *Provided, however*, That in all cases of appeal by a public–service company from an order of the commission establishing, changing or altering, or in any manner affecting the prices, rates, joint rates, or charges for any service, such appeal shall operate as a supersedeas upon the filing of a bond in favor of The People of Puerto Rico, in the said court, by said public-service company, for the use of all parties damaged by the failure of such company to comply with the order appealed from, during the period of such supersedeas. Said bond to be in such sum as shall be fixed by the court, and with sureties to be approved by the court, shall be conditioned for the repayment to all such aggrieved parties of any excess over the rate or charge fixed by the commission, which shall be received by such public–service company after the making of such order by the commission, if the said order shall be finally affirmed, and may also contain such further conditions as the court may order and direct."

*Wetherbee* v. *Lodwick Lumber Co.*, 193 So. 671 (La., 1940) ;
*Stewart* v. *Hurt*, 68 P. 2d 726 (Cal., 1937) ; Pound, Appellate
Procedure in Civil Cases, pp. 95, 148. *Cf. Travis* v. *Public
Utilities Commission of Ohio*, 175 N. E. 586 (Ohio, 1931).

██ We have held that the lower court has discretion
in this type of case on whether to issue an order of super-
sedeas pending appeal. *South P. R. Sugar Co.* v. *District
Court*, 62 P.R.R. 811; *In the Matter of the White Star Bus
Line, Inc.*, 53 P.R.R. 370; *White Star Bus Line* v. *District
Court*, 52 P.R.R. 809. But under § 78 of the Public Service
Commission Act the right of appeal is absolute. It follows
that even if supersedeas had been applied for and denied un-
der § 80, the defendant could have continued its appeal. This
reinforces our view that the lack of an order of supersedeas
did not impair the right of the defendant to pursue its ap-
peal from the order of September 23, 1947.

██ The order of September 23, 1947 of the Commis-
sion was not stayed by an interlocutory order of the former
district court. The plaintiffs were therefore free to file the
present independent proceeding against the defendant for the
amount allegedly due under the order of September 23, 1947
despite the fact that an appeal from the latter order was still
pending. By not obtaining an order of supersedeas in the
first proceeding, the defendant ran the risk that collection
would be effected in the instant case before the order of Sep-
tember 23, 1947 was declared null and void in the first pro-
ceeding. But since that did not occur, the way is still open
for the defendant to assert here that the plaintiffs have no
case because the order of September 23, 1947, on which their
suit is based, has been declared null and void in the first pro-
ceeding by a final and unappealable judgment.[5]

---

[5] The judgment of November 20, 1951 of the former district court
declaring the order of September 23, 1947 null and void in the first pro-
ceeding was entered after the defendant filed its original brief in ·this
Court in the present case but before the oral argument thereof. The de-
fendant could have filed the certified copy of the judgment of November
20, 1951 with us before we issued our original opinion on March 31, 1952

■■■ However, we are faced with the problem that the certified copy of the judgment of November 20, 1951 of the former district court declaring the order of September 23, 1947 of the Commission null and void is not in the record on appeal but is brought here by the defendant for the first time as a document accompanying its motion for reconsideration. The reasoning of the defendant that we can take the judgment of November 20, 1951 into consideration in deciding this case, despite the fact that it is not in the record, is as follows: An order of the Public Service Commission fixing rates to be charged by a public utility is legislative in nature and has the force of law. We may therefore take judicial notice of such an order just as we would take judicial notice of a law. We would judicially notice and apply to a case pending on appeal a law enacted subsequent to the judgment of the trial court. By the same token, we should take judicial notice of the judgment of November 20, 1951 and apply it herein as though it were a law enacted subsequent to the judgment of the lower court in this case.

We agree with two of the points made by the defendant in the foregoing argument. First, where as in this case the Public Service Commission sets rates which a public utility may charge in the future, it exercises quasi-legislative functions. *Prentis* v. *Atlantic Coast Line*, 211 U. S. 210; *Grand Trunk Ry.* v. *Indiana R. R. Comm.*, 221 U. S. 400; *State Comm'n* v. *Wichita Gas. Co.*, 290 U. S. 561; *Arizona Grocery* v. *Atchison Ry.*, 284 U. S. 370; *Oklahoma Packing Co.* v. *Gas Co.*, 309 U. S. 4; *Mulcahy* v. *Public Service Commission*, 117 P. 2d 298 Utah, 1941).[6] We therefore assume without deciding that we would take judicial notice of a

---

in this case. Instead, it waited until we decided the case against it as to 1946 and 1947 on other grounds. It then raised this question for the first time in its motion for reconsideration, filing with the motion a copy of the certified judgment of November 20, 1951.

[6] A somewhat different question was involved in *Godreau & Co.* v. *Public Service Comm'n*, 71 P.R.R. 608 where we held that general regulations of the Commission are legislative in nature.

rate order of the Commission in the same way as we take judicial notice of an Act of the Legislature. Section 398, Code of Civil Procedure, 1933 ed. Second, ordinarily we would apply to a case on appeal a law which was enacted subsequent to the judgment of the lower court. *Asoc. Empl. Bayamón Transit* v. *Labor Rel. Board*, 70 P.R.R. 273, 284–87, and cases cited; *Ziffrin, Inc.* v. *United States*, 318 U. S. 73, 79; *Huddleston* v. *Dwyer*, 322 U. S. 232; Annotation, 111 A.L.R. 1317, 1326.

The difficulty is that we are not being asked in this case to take judicial notice of the action of the Commission in fixing a rate. Rather, for the first time on reconsideration, the defendant is requesting that we take judicial notice of the judgment of the former district court declaring a particular rate order null and void. The function of the courts in reviewing such an order is strictly judicial. *Godreau & Co.* v. *Public Service Comm'n*, 71 P.R.R. 608, 613; *Commission* v. *Havemeyer*, 296 U. S. 506, 511, 518. Taking judicial notice of such a judgment may therefore be quite different from taking judicial notice of the quasi-legislative action of the Commission in approving the rate. *Cf. State Comm'n* v. *Wichita Gas Co.*, *supra*, p. 569; *Arizona Grocery* v. *Atchison Ry.*, *supra*, p. 389; *Napa Valley Co.* v. *R. R. Comm.*, 251 U. S. 366; *Southern Pac. Co.* v. *Van Hoosear*, 72 F. 2d 903 (C.A. 9, 1934). Consequently, if we became satisfied that we were precluded from taking judicial notice of the judgment of November 20, 1951, at the most we would perhaps vacate the judgment before us and remand the case to the lower court with instructions to enter judgment for the defendant upon submission to it of the certified copy of the judgment of November 20, 1951. See *Cruz* v. *Heirs of González*, 72 P.R.R. 291. However, the result we reach on the next contention makes it unnecessary to determine (1) if we should take judicial notice of the judgment of November 20, 1951 nullifying the rate order, or (2) assuming we would not take such judicial notice,

whether we would remand the case to the lower court to permit introduction of the judgment in evidence.

We turn to the defendant's final contention, which is also made for the first time on reconsideration. The defendant argues that in view of the repeal of Act No. 221 of 1942 by Act No. 426, Laws of Puerto Rico, 1951, no proceeding for a permanent rate can hereafter be initiated or concluded; that the validity of the temporary rate order of September 23, 1947 is predicated on the pendency of a permanent rate proceeding; that the elimination by Act No. 426 of the possibility that a permanent rate will be fixed hereafter withdraws the statutory basis on which the temporary rate rests; and that the plaintiffs cannot prevail in this suit for collection of money once the statutory basis for the temporary rate no longer exists.

Under Act No. 221 sugar mills became public utilities and were entitled under § 33 (a) thereof to charge for their services rates fixed by the Commission which in the case of each mill would yield to it a fair rate on the fair value of the property devoted to said service. *Cía. Azucarera Toa* v. *Public Serv. Comm'n*, 71 P.R.R. 197, 200–01. The Commission was also authorized to fix temporary rates to be charged by sugar mills as in the case of traditional public utilities. But by statute and perhaps under the due process clause, no such temporary rates could be fixed unless a proceeding to fix a permanent rate was pending. *Cía. Azucarera Toa* v. *Public Serv. Comm'n, supra;* Act No. 12, Laws of Puerto Rico, 1941, adding § 24 (a) to the Public Service Commission Act.

Act No. 221 has been repealed. It has been replaced by Act No. 426 of 1951 under which sugar mills charge rates for their services based on the formulae established in that Act and not rates fixed individually for each mill as a public utility under the formula laid down in § 33 (a) of Act No. 221. It is therefore no longer possible under the present state of the law for such an individual permanent

rate proceeding to be initiated or concluded. And there is no evidence in the record that a permanent rate was ever fixed by the Commission for the defendant.[7] To permit a suit based on the temporary rate under these circumstances would be in effect to convert the temporary rate into a permanent rate for the crop years in question. As we pointed out in the *Toa* case, that result might be unconstitutional and certainly was not intended by the Legislature.

As already noted, we may apply to this case a statute enacted subsequent to the judgment of the trial court. The passage of Act No. 426 of 1951 subsequent to the entry on October 17, 1950 of the judgment of the lower court in this case has precluded any possibility that a permanent rate will ever be fixed for the defendant. The validity of the temporary rate order is conditioned not only on the pendency of a permanent rate proceeding but also on the continued existence of the statute authorizing the latter. It follows, in view of the repeal of Act No. 221, that the defendant cannot be required to fulfill any monetary obligations established in the temporary rate order.

We are aware that § 39 of Act No. 426 reads in part as follows: "*Provided, further*, That the repeal of Act No. 221 of May 12, 1942, shall not impair rights, causes for actions, suits, appeals, penalties, cases and proceedings, filed or to be filed, which may have arisen under said Act No. 221 of 1942, its regulations and/or the orders issued by the Public Service Commission of Puerto Rico, up to the date in which said Act is effectively repealed, which rights, causes for actions, suits, appeals, penalties and cases and proceedings shall subsist and may be demanded, filed or continue to be prosecuted as if Act No. 221 of 1942 had not been repealed."[8]

---

[7] In *Cia, Azucarera Toa* v. *Public Serv. Comm'n*, 71 P.R.R. 197, we said at p. 207: "At the oral argument it was also indicated that for budgetary reasons the Commission has been unable to initiate proceedings to fix permanent rates."

[8] In view of the specific provisions of §39, § 386 of the Political Code plays no role in this case.

It is difficult to determine the exact scope of the language in this proviso. But Act No. 426 obviously was passed in the light of our decisions in the *Toa* and *Godreau* cases. And in the *Toa* case we pointed out clearly that a temporary rate was invalid if no permanent proceedings was pending. We therefore cannot hold that the Legislature intended by § 39 of Act No. 426 that suits such as the instant case, which are based on orders of the Commission fixing temporary rates, should remain pending when the statutory and perhaps the constitutional basis for such suits was eliminated by Act No. 426 itself. We recognize that probably many, if not most, of the pending claims under Act No. 221 stem from temporary rate orders. But for the reasons noted, we cannot hold that such claims can still be pressed despite the fact that due to supervening law there is no longer any prospect that individual permanent rates will ever be fixed pursuant to Act No. 221. *Cf. United States* v. *Chambers*, 291 U. S. 217; Annotation, 89 A.L.R. 1514.

We have not overlooked the point that any issue as to the validity of the Commission's temporary rate order should ordinarily be determined by appeal from that order under § 78 of the Public Service Commission Act, and not by way of defense to a suit like the instant case for collection of money under § 27 of Act No. 221.[9] But we are of the view that this rule does not obtain where as here the order of the Commission has been deprived of any possible legal basis by a supervening statute.

For the reasons stated, our opinion and judgment of March 31, 1952 will be withdrawn. Instead, the judgment

---

[9] As already noted, the defendant has submitted to us with its motion for reconsideration a certified copy of a judgment of November 20, 1951 indicating that the defendant did appeal from the temporary rate order of the Commission of September 23, 1947 and that the former district court entered a judgment which has become final and unappealable declaring the temporary rate order null and void. See footnote 3. For the reasons stated in the body of the opinion, we have decided this case without taking into consideration the judgment of November 20, 1951.

of the former district court in favor of the plaintiffs will be reversed and a new judgment entered for the defendant.

Mr. Justice Negrón Fernández, Mr. Justice Ortiz and Mr. Justice Sifre did not participate herein.