390

En el Asunto de la White Star Bus Line, Inc. contra varios porteadores públicos de vehículos de motor con capacidad autorizada no mayor de .siete pasajeros. Jaime Ortiz, Alejandro Salgado y Juan González y otros, etc., apelantes. En el Asunto de la White Star Bus Line, Inc., etc., Juan González, Alejandro Salgado y Jaime Ortiz, peticionarios y apelantes, *v.* Comisión de Servicio Público de Puerto Rico, etc.; White Star Bus Line, Inc., interventora; M. Romany, Juez de Distrito de San Juan y Enrique de Orbeta, Jefe de la Policía Insular, demandados.

Núms. 7770 y 19.—*Sometidos:* Junio 6, 1938.  *Resueltos:* Julio 5, 1938.

*Juan Valldejuli,* abogado de los apelantes; *Celestino Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados de la White Star Bus Line, Inc., interventora; *T. Torres Pérez,* abogado de la Comisión de Servicio Público, demandada.

EL JUEZ ASOCIADO SEÑOR WOLF emitió la opinión del tribunal.

Tenemos ante nos una moción para desestimar el recurso por frívolo y una petición de los apelantes solicitando un *injunction* en ayuda de la jurisdicción de este Tribunal.

El artículo 38 de la Carta Orgánica de Puerto Rico, según fué enmendado, dispone:

"Toda franquicia, derecho, privilegio y concesión de carácter público o cuasi público, será otorgada por una Comisión de Servicio Público compuesta de un Comisionado de Servicio Público, que será Presidente de dicha Comisión, y dos comisionados asociados nombrados por el Gobernador con el consejo y consentimiento del Senado. El Comisionado de Servicio Público será nombrado por un período de tres años y hasta que sea nombrado su sucesor y hubiera éste tomado posesión de su cargo; y uno de dichos comisionados asociados, primeramente nombrados, desempeñará el cargo por un término de dos años y uno por el término de un año, y después cada uno de dichos comisionados asociados desempeñará el cargo por un período de tres años y hasta que su sucesor haya sido nombrado y hubiera tomado posesión de su cargo; *Disponiéndose,* que los actuales comisionados electivos de la mencionada Comisión continuarán en sus cargos hasta el vencimiento de sus términos, tal como se dispone actualmente por la ley, y junto con los tres miembros nombrados por el Gobernador formarán la Comisión, según queda dicho, hasta la terminación del período de sus servicios, y no después. El sueldo del Comisionado será $6,000 por año. Éste dedicará todo su tiempo a sus deberes como tal Comisionado. La compensación de los miembros asociados, tanto los elegidos como los de nombramiento, será 10 dólares por cada día de asistencia a las sesiones de la Comisión; pero

en ningún caso recibirán más de $1,000 durante ningún año. Dicha Comisión queda facultada para desempeñar, y se le ordena que desempeñe, todas las funciones ejecutivas relacionadas con las corporaciones de servicio público que hasta ahora se han conferido por la ley al Consejo Ejecutivo, y aquellos deberes y funciones adicionales que se confieran a dicha Comisión por la Asamblea Legislativa. Ninguna franquicia, derecho y privilegio que otorgare la mencionada Comisión tendrá efecto hasta que haya sido aprobado por el Gobernador y se hubiese informado al Congreso, el cual por la presente se reserva la facultad de anularlos o modificarlos.

"No serán aplicables a Puerto Rico la Ley sobre comercio interestadual y las varias enmiendas hechas o que se hagan a ella; las leyes sobre aparatos de seguridad y las diferentes enmiendas hechas o que se hagan a las mismas; ni la Ley del Congreso titulada 'Ley para enmendar una Ley titulada "Ley para regular el comercio", aprobada en febrero 4 de 1887, y todas las leyes que la enmiendan en el sentido de proveer para una valuación de las diferentes clases de bienes de los porteadores sujetos a dicha Ley, y para obtener informes concernientes a sus acciones, bonos y otros valores,' aprobada el 1º de marzo de 1913.

"La Asamblea Legislativa de Puerto Rico queda autorizada por la presente para decretar leyes relativas a la reglamentación de los precios, tarifas y servicios de todos los porteadores públicos en Puerto Rico, y la Comisión de Servicio Público creada por esta Ley tendrá facultad para poner en ejecución las leyes de ese carácter mediante reglamentación adecuada."

De conformidad con esta disposición, y quizá independientemente, la Legislatura aprobó la Ley núm. 70 de 1917 (Leyes de 1917 (2), pág. 433), que fué posteriormente enmendada, aunque la mayoría de las enmiendas no tienen relación alguna con este caso. A virtud de estas disposiciones legales, la Comisión de Servicio Público dictó en enero 4, 1938, la siguiente resolución:

"Se ordena, además, y por la presente queda prohibido, a todo vehículo de motor que no hubiere sido previamente autorizado por esta Comisión, que actúe, sirva, funcione u opere como porteador público en el transporte de pasajeros por asiento, brindando, ofreciendo, prestando o rindiendo su servicio al público en general, entre los municipios de San Juan y Río Piedras o dentro de los municipios de San Juan o Río Piedras, o entre puntos intermedios. El hecho

de que un vehículo de motor actúe como porteador público, transportando pasajeros por asiento, de un sitio a otro, entre los municipios de San Juan y Río Piedras o dentro de los municipios de San Juan o Río Piedras, o entre puntos intermedios, constituirá prueba prima facie de una violación de las disposiciones de esta orden.''

Con anterioridad a esto la Comisión de Servicio Público había expedido una franquicia a la White Star Bus Line y modificado la misma en marzo 4, 1932. Los apelantes en este caso, es claro, nunca obtuvieron de la Comisión de Servicio Público ninguna clase de certificado o autoridad y en 21 de enero de 1938 apelaron de la antedicha resolución para ante la Corte de Distrito de San Juan, de conformidad con la sección 78 de la referida ley de 1917.

La sección 80 de la ley de 1917, según fué enmendada por la Ley núm. 21 de 1935 (Leyes de ese año (1), pág. 181) dispone:

''Ninguna apelación de ninguna orden de la Comisión en ningún caso surtirá el efecto de una suspensión (*supersedeas*) de la orden apelada, a menos que la predicha corte correspondiente en virtud de una orden interlocutoria diera efecto suspensivo a dicha apelación, mediante la prestación de la fianza correspondiente y previa vista a ese efecto; Y *disponiéndose, sin embargo,* que en aquellos casos en que la apelación sea entablada contra una orden de la Comisión, estableciendo, fijando, cambiando o alterando precios, tarifas o cargos por cualquier servicio público, la apelación no suspenderá los efectos de la orden de la Comisión como *supersedeas* a menos que la compañía de servicio público afectada pruebe ante la Corte, previa la celebración de la vista correspondiente con la comparecencia de la Comisión, que la orden de ésta es confiscatoria y que sus efectos privarían a tal compañía de servicio público de su propiedad sin el debido proceso de ley; y si estos hechos se establecieren ante dicha corte, ésta podrá dictar una orden que será fundamentada con conclusiones de hecho y de derecho suspendiendo los efectos de la orden de la Comisión; pero previamente requerirá a la compañía de servicio público para que preste una fianza a favor de El Pueblo de Puerto Rico, para beneficio de todas las partes perjudicadas por la falta de cumplimiento de la orden apelada durante el período de dicha suspensión y por la suma y en las condiciones que la corte dis-

ponga; será condición de dicha fianza el que ésta será para reembolsar a todas las partes perjudicadas por la suspensión de la ejecución de la orden de la comisión, en cualquier cantidad que hubiere sido cobrada por la compañía de servicio público durante el período de suspensión en exceso de lo que la Comisión de Servicio Público hubiere dispuesto, en el caso de que la orden de la Comisión fuere finalmente confirmada; *Y disponiéndose, además,* que para los fines de esta suspensión (*supersedeas*) la prueba que se someta a la consideración de la corte será la que aparezca del récord como presentada y sometida a la consideración de la Comisión de Servicio Público; y no se admitirá ninguna otra prueba que no hubiere sido previamente sometida a dicha Comisión.''

En armonía con esta última sección, luego de radicarse una petición y de celebrarse una vista, la Corte de Distrito de San Juan, por voz del Juez Llauger, libró una orden suspendiendo la dictada por la Comisión de Servicio Público y señaló una fianza de $3,000 a favor de El Pueblo de Puerto Rico. Es conveniente decir que las personas que apelaron de la resolución de la Comisión de Servicio Público tan sólo fueron tres. Necesariamente, sin embargo, cuanto se haga por ellas resulta en favor de aquéllos que trabajan en la forma en que lo hacen los apelantes, o sea, alquilando sus vehículos por asiento a las personas que pagan la tarifa de cinco centavos que se les cobra.

La apelación en sus méritos fué oída ante el Juez Romany, quien, en una opinión elaborada y cuidadosamente considerada, sostuvo la orden de la Comisión. En apelación los apelantes han radicado una petición solicitando de este tribunal que expida una orden en ayuda de su jurisdicción, alegando que varios porteadores de la misma naturaleza que los apelantes estaban siendo arrestados y procesados en las cortes de Puerto Rico. La interventora, White Star Bus Line, radicó una moción para que se desestime la apelación por frívola, y, en armonía con ella, se opuso a la expedición del *injunction* en ayuda de la jurisdicción de este tribunal.

Uno de los primeros puntos suscitados por la interventora es que la resolución de la Comisión de Servicio Pú-

blico, en su esencia, tan sólo exige que los vehículos similares a los usados por los apelantes, o más bien sus dueños, obten-. gan un certificado o autorización de la Comisión de Servicio Público. Es cierto, conforme dice la interventora, que los apelantes no sólo no obtuvieron un certificado de la Comisión de Servicio Público, sino que en ninguna parte de los procedimientos alegaron o trataron de demostrar que dicho certificado o autorización no podía ser obtenido. Creemos que la interventora está equivocada. El fin primordial de esta resolución fué impedir que personas como los apelantes usaran las carreteras y caminos entre San Juan y Río Piedras para explotar su negocio. Es un hecho importante que la White Star Bus Line comparezca en el caso y que en esencia defienda su franquicia, fortificada por otras resoluciones de la Comisión de Servicio Público. Podríamos tomar conocimiento público, o casi conocimiento público, de que la Comisión de Servicio Público no otorgará a los apelantes un derecho, a excepción quizá bajo condiciones que ellos u otros no podrían cumplir. El principio enunciado por el Juez Presidente Marshall entra a desempeñar un papel, o sea, que no es tal vez lo que se ha hecho efectivamente bajo una resolución o situación, sino lo que puede ser hecho. Sin embargo, no consideramos que el móvil de la orden de la Comisión desempeñe un papel muy importante en la resolución de este caso. ■ En el artículo 2 de la Ley de Servicio Público (Ley núm. 70 de 1917, supra) aparece la definición de compañías de servicio público, como sigue:

"Artículo 2.—Son compañías de servicio público, a los efectos de esta Ley, las personas naturales o jurídicas que se dediquen en Puerto Rico a cualesquiera de los fines o· negocios siguientes:

"(a) Transporte de personas o carga utilizando en todo o .en parte las vías marítimas, fluviales o terrestres.

"

"(h) Cualesquiera otras que se dediquen a negocios o fines de naturaleza análoga a los enumerados anteriormente.

"Dichas compañías no estarán sujetas a las disposiciones de esta Ley, en lo que respecta a cualquier negocio que hicieren o a cualquiera propiedad perteneciente a ellas fuera de Puerto Rico; ni se interpretarán las disposiciones de esta Ley en el sentido de aplicarse a ningún asunto o cosa con respecto al cual el Congreso ha dictaminado con exclusión del poder de Puerto Rico. Ninguna de las disposiciones de esta Ley será aplicable al desarrollo, transmisión, o distribución de electricidad; a la manufactura o distribución de gas; al abastecimiento o distribución de agua; o a la producción, entrega o abastecimiento de vapor o de cualquier otra substancia para calefacción o fuerza motriz por un productor, que de otro modo no fuera una compañía de servicio público, para el uso exclusivo de dicho productor, o para el uso de los inquilinos de dicho productor, y no para la venta a otros."

Y luego en el mismo artículo hallamos los siguientes términos:

"La frase 'porteador público', según se usa en esta Ley, incluye toda persona natural o jurídica dedicada por lucro al transporte de pasajeros, o carga, o de ambas cosas en Puerto Rico, por cualquier medio de locomoción."

El artículo 95 de dicha ley provee:

"Si cualquier compañía de servicio público infringiere cualquiera de las disposiciones de esta Ley, o realizare cualquier acto que por la presente se prohibe; o dejare, omitiere, desatendiere o se negare a desempeñar cualquier deber a que está obligada por esta Ley; o dejare, omitiere, desatendiere o se negare a obedecer, observar y cumplir cualquier disposición, requisito, determinación u orden final que hubiere dictado la Comisión; o si dejare de cumplir cualquier sentencia pronunciada, u orden o decreto expedido, por cualquier corte, dicha compañía de servicio público pagará al Tesoro de Puerto Rico una suma no menor de cincuenta (50) dólares ni mayor de mil (1,000) dólares por dicha infracción, omisión, falta, desatención o negativa, la cual suma se recobrará en virtud de una acción entablada a nombre de El Pueblo de Puerto Rico en la Corte de Distrito de San Juan, Sección Primera, cuya corte queda por la presente investida con jurisdicción exclusiva para oír y resolver todas dichas acciones, y fijar el montante de la multa.

"Al interpretar y hacer cumplir las disposiciones de este artículo, la infracción, omisión, falta, negligencia o negativa de cualquier ofi-

cial, agente u otra persona que actuare o estuviere empleada por dicha compañía de servicio público, actuando dentro de la esfera de su cargo, se considerará en todo caso que es la infracción, omisión, negligencia o negativa de dicha compañía de servicio público.''

El artículo que antecede, según fué enmendado en 1927 (Ley núm. 2 de ese año, pág. 407) otorga jurisdicción a cualquier corte competente, incluyendo las cortes municipales.

Por tanto, si la Ley de Servicio Público ha de tomarse en su valor a la par, la Comisión de Servicio Público tenía pleno derecho a reglamentar el tránsito y a prohibir absolutamente a los dueños de vehículos de motor que transportaran pasajeros a cinco centavos por asiento o sin obtener un certificado o autorización de la Comisión de Servicio Público.

No podemos convenir con los apelantes en que la Comisión de Servicio Público está creando un delito. Lo que hace prima facie es ejercer autoridad para reglamentar el tránsito de personas como los apelantes y otros que se dedican al mismo negocio, en este caso, dentro de las municipalidades de San Juan y Río Piedras y puntos intermedios. Los casos son claros al efecto de que a las órdenes de las comisiones de servicio público y de otros cuerpos administrativos puede ponérseles en vigor mediante una disposición penal general como la contenida en el artículo 95, supra. Convenimos con la corte inferior substancialmente en que el hecho de que la orden de la Comisión de Servicio Público fije la regla de evidencia no es importante para los fines de esta discusión. La cuestión de si la Comisión de Servicio Público tenía o no derecho a promulgar esta llamada regla de evidencia puede ser planteada en cualquier recurso y ser ignorada o anulada sin intervenirse con las otras disposiciones administrativas. Diferimos de los apelantes en que la Ley de Servicio Público no es de aplicación a su caso. Las varias disposiciones del artículo 2 lo cobijan. Estas consideraciones resolverían la apelación, que entonces podría considerarse como frívola si no fuera por el hecho de que los apelantes sugieren otra duda.

■ Esa duda es ésta, que el artículo 38 de la Carta Orgánica, supra, parece ser aplicable exclusivamente a porteadores públicos.´ De toda esta parte de la Carta Orgánica se hace evidente que el Congreso tuvo en mente compañías o probablemente personas que actuaran como tales porteadores públicos. Desde luego, los redactores de la Carta Orgánica de 1917 puede que no pensaran en los pequeños automóviles con asientos para un número limitado de pasajeros. No obstante, la tendencia general de la Carta Orgánica, a nuestro juicio, se limita a corporaciones de servicio público.

Entonces surge la cuestión de si la Asamblea Legislativa de Puerto Rico podía, mediante una pretendida definición, convertir a los apelantes en compañías de servicio público, si de acuerdo con las bien conocidas prácticas y costumbres de vehículos de motor que se dedican al transporte de pasajeros, ellos no eran tales.

Tenemos ante nos, entre otras, la decisión de la Corte Suprema de Estados Unidos en el caso de *Smith* v. *Cahoon*, 283 U. S. 553. En ese caso Smith fué arrestado a virtud de una acusación que le imputaba el explotar vehículos en las carreteras del Condado de Duval, Estado de Florida, sin haber obtenido el certificado de necesidad y conveniencia pública, y sin haber pagado la contribución, requeridos por el capítulo 13700 de las leyes de Florida de 1929.

El estatuto bajo el cual fué arrestado el apelante era aplicable en sus términos a todas aquellas personas que explotaran vehículos de motor en el negocio de transporte de pasajeros o cosas ''mediante paga o como porteador público.'' Prohibía a tales personas que funcionaran de ese modo sin haber obtenido primeramente de la Comisión Ferroviaria del Estado un certificado de necesidad y conveniencia pública. Las condiciones exigidas para obtener tal certificado incluían (*a*) una lista de las tarifas, (*b*) la prestación de una fianza para proteger al público de los daños provenientes de negligencia en la explotación de los vehículos y para proteger a los pasajeros y cosas transportados. La Comisión estaba

facultada para reglamentar el "servicio y la seguridad del tránsito"; para fijar o aprobar los tipos, tarifas, cargos, clasificación, reglas y reglamentos para cada compañía de transporte; adoptar un sistema y una clasificación uniforme de cuentas; y exigir la radicación de informes anuales y de otra índole.

El apelante fué empleado bajo un contrato exclusivo celebrado con la Atlantic & Pacific Tea Company para transportar sus mercancías desde Jacksonville a varios otros lugares de Florida. Nunca se había hecho pasar por porteador público. Se impugnó el estatuto por violar las cláusulas relativas al debido proceso de ley y la igual protección de las leyes, de la Enmienda Décimocuarta de la Constitución.

La Corte Suprema de los Estados Unidos, en la opinión emitida por voz del Juez Presidente Hughes, resolvió:

1. Que puesto que el estatuto fijaba las mismas condiciones para todas aquellas personas que solicitaran certificados de necesidad y conveniencia pública a tenor de la misma, y toda vez que estas condiciones comprendían un sistema de inspección y control que podía aplicarse constitucionalmente tan sólo a porteadores públicos, un porteador privado que mediante paga se dedicara al negocio de transporte, no podía ser arrestado constitucionalmente por haber dejado de obtener un certificado y de pagar la contribución requerida.

La corte dijo:

"Todos los porteadores cubiertos por la ley, ya sean privados o públicos, son colocados por los términos del estatuto precisamente en la misma situación. Todos deben obtener certificados de necesidad y conveniencia pública, radicando una solicitud y llenando las mismas condiciones. Es cierto que el estatuto no exige expresamente que un porteador privado se constituya a sí mismo en porteador público, sino que el objeto del mismo es someter a todos los porteadores que caen dentro de los términos de su definición a las mismas obligaciones. Tal reglamentación de los negocios de un porteador privado, como el apelante, está evidentemente fuera de los poderes del Estado. (Citas.)"

2. Que no podía considerarse que el estatuto tuviera por mira presentar un plan constitucional para los porteadores públicos y otro para los privados porque entonces estaría sujeto a la objeción constitucional de falta de la debida certidumbre. Véase la página 565.

3. Toda vez que el estatuto excluye expresamente de su aplicación ''a cualquier compañía de transportación que se dedique solamente al transporte de productos agrícolas, hortícolas, de vaquerías, u otros productos de la hacienda, así como pescado fresco y salado, ostras y camarones desde el punto en que se producen hasta aquél donde se empacan o embarcan, y eximía también a los vehículos de motor que se utilizaran exclusivamente para el transporte o entrega de los productos de las vaquerías,'' el mismo era contrario a las cláusulas sobre igual protección de las leyes, de la Enmienda Décimacuarta.

Podría ponerse en tela de juicio, en su consecuencia, conforme se ha dicho en otros casos—véase 51 A. L. R. 825—si la Asamblea Legislativa podía hacer la antedicha definición.

No tenemos ningún criterio muy definido sobre la materia y el caso *Smith* v. *Cahoon,* supra, puede ser distinguido, mas bajo las circunstancias, no podemos resolver que la apelación es frívola y por ende la moción para desestimar debe ser declarada sin lugar.

El artículo 78 de la ley de 1917 demuestra cómo y cuándo puede expedirse una orden de *supersedeas.* ·A nuestro modo de ver, no importa que el llamado *supersedeas* sea esencialmente o no un *injunction.* La cuestión es que, no importa como se le caracterice, el Juez de la Corte de Distrito de San Juan estaba autorizado para expedirlo, a discreción, *pendente lite;* y así lo hizo.

Si la idea de la Asamblea Legislativa fué proteger a un apelante de cualquier orden de la Comisión de Servicio Público hasta que este tribunal dictara su decisión final, ella es una cuestión debatible.

*Por tanto, el efecto de la orden de la Comisión de Servicio Público de enero 4, 1938, debe ser suspendido hasta nueva orden de este tribunal, siempre que los peticionarios presten una fianza por la suma de $3,000 para responder de los daños y perjuicios que puedan ocasionársele a cualquiera de las partes afectadas por la suspensión de dicha orden. El caso en sus méritos será señalado para el 11 de julio, 1938.*