CARLOS M. MOLINI, GABRIEL PÉREZ OLIVERAS y EDDIE
STELLA, ETC., demandantes y apelados, *v.* SOCIEDAD MA-
RIO MERCADO E HIJOS, demandada y apelante.

Núm. 10406.—*Sometido:* Julio 8, 1952. *Resuelto:* Octubre 11, 1952.

938

*Pedro M. Porrata* y *Jesús A. Cintrón Rivera,* abogados de la apelante; *Pablo Defendini,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Este es un pleito en cobro de dinero iniciado en el antiguo tribunal de distrito por un número de colonos contra la demandada, dueña de una central azucarera en la cual muelen los demandantes sus cañas.

Por orden del 23 de septiembre de 1947 la Comisión de Servicio Público fijó la tarifa provisional a ser cobrada por la demandada por moler las cañas de sus colonos. Esta orden disponía que dicha tarifa provisional se aplicaría a la zafra de 1946 y a las subsiguientes hasta que la Comisión fijara la tarifa permanente. La orden también disponía, como una de las condiciones de la tarifa provisional, que la demandada debía compensar a sus colonos por el arrastre y arrimo de sus cañas a razón de 15¢ por tonelada más 5¢ por tonelada-kilómetro hasta un máximo de un dólar por tonelada.

En 1947 los demandantes radicaron una querella ante la Comisión alegando que durante las zafras de 1945, 1946 y 1947 la demandada no les había pagado por el arrastre y arrimo de sus cañas a razón de 15¢ por tonelada más 5¢ por tonelada-kilómetro sino a razón de 15¢ por tonelada más 3¢ por tonelada-kilómetro. Luego de celebrarse una vista, en 1949 la Comisión dictó una orden requiriendo a la compañía para que pagara a los demandantes la diferencia entre las dos tarifas. La compañía no cumplió con esta orden. Los demandantes entonces entablaron su demanda y obtuvieron sentencia contra la demandada en el antiguo tribunal de distrito a tenor con el artículo 27 de la Ley núm. 221, Leyes de Puerto Rico, 1942 ((1) pág. 1177).(1) En apelación, resolvimos que los demandantes debían prevalecer con respecto a los años 1946 y 1947, mas no así en cuanto al año 1945. Por consiguiente, en vez de confirmar la sen-

---

(1) El artículo 27 es similar al artículo 28 de la Ley de Servicio Público, núm. 70 de 1917, Vol. II (pág. 433). Ambos artículos permiten el procedimiento que aquí han seguido los demandantes. Disponen que en el antiguo tribunal de distrito la orden de la Comisión constituirá evidencia prima facie de los hechos en ella expuestos. Véanse *Washington Terminal Co.* v. *Boswell*, 124 F.2d 235, 241 (C.A., D.C., 1941); L.R.A. 1918 E 303, 312.

Toda vez que este pleito se basa en la orden de la Comisión del 23 de septiembre de 1947 fijando una tarifa provisional, y posiblemente en otra orden similar, no nos concierne aquí ninguno de los acuerdos de las partes ni ninguna de las determinaciones del Secretario de Agricultura de los Estados Unidos.

tencia, la revocamos y devolvimos el caso al tribunal inferior para que se hiciera un reajuste de las cantidades adeudadas a los demandantes. ([2])

■■ Ahora tenemos ante nos la moción de reconsideración de la demandada, a la cual dimos curso con el fin de considerar ciertas contenciones hechas por primera vez por la demandada en reconsideración. La primera de estas nuevas contenciones es que la sentencia dictada por el tribunal inferior a favor de los demandantes debe ser revocada y dictarse sentencia a favor de la demandada, ya que la orden dictada por la Comisión el 23 de septiembre de 1947 fijando la tarifa provisional en que se basa este pleito, ha sido declarada nula por las cortes. En apoyo de este argumento, la demandada ha radicado con su moción de reconsideración copia certificada de la sentencia dictada por el antiguo tribunal de distrito con fecha 20 de noviembre de 1951, que declara nula la orden del 23 de septiembre de 1947. ([3])

Los demandantes contestan esta contención arguyendo que la sentencia del 20 de noviembre de 1951 no puede tener efecto alguno sobre el presente pleito en cobro de dinero toda vez que la demandada dejó de solicitar y obtener una orden interlocutoria de *supersedeas* mientras estuvo pendiente la

---

([2]) La reclamación para el año 1945 suscita un problema distinto, ya que hay cierta disputa respecto a si la orden de la Comisión requiriendo el pago para la zafra de 1945 estuvo predicada en la tarifa provisional del 23 de septiembre de 1947 o en alguna actuación anterior de la Comisión. El resultado a que llegamos en este caso hace innecesario el resolver esta disputa.

([3]) Esta sentencia del 20 de noviembre de 1951, las conclusiones de hecho y de derecho que la acompañan, y la certificación del Secretario de la corte inferior, reflejan los siguientes hechos: La demandada apeló de la orden de la Comisión para el antiguo tribunal de distrito de acuerdo con el artículo 78 de la Ley de Servicio Público. La sentencia de dicho tribunal del 20 de noviembre de 1951 se ha convertido en firme e inapelable. El tribunal inferior concluyó que no había pendiente ante la Comisión ningún procedimiento para fijar una tarifa permanente. Por tanto, dictó sentencia a favor de la demandada, fundado en nuestra decisión en el caso de *Cía. Azucarera Toa* v. *Com. Servicio Público*, 71 D.P.R. 212, al efecto de que la Comisión no puede fijar una tarifa provisional hasta tanto se haya iniciado un procedimiento para fijar una tarifa permanente.

apelación para ante el antiguo tribunal de distrito contra la orden de la Comisión del 23 de septiembre de 1947 a tenor con el artículo 80 de la Ley de Servicio Público.([4]). No estamos de acuerdo. Nada hallamos en el artículo 80 que haga que la fianza de *supersedeas* sea un requisito previo a la revisión de una orden de la Comisión. Por el contrario, el artículo 80 de su faz demuestra que la Legislatura meramente tuvo la intención de variar para este tipo de caso la regla en los pleitos corrientes en esta jurisdicción, al efecto de que la apelación suspende automáticamente la ejecución de la sentencia. Artículo 297 del Código de Enjuiciamiento Civil, ed. 1933. Por tanto exigió un *supersedeas* para que

---

([4]) El artículo 80 lee como sigue: *"Orden de suspensión (supersedeas) en apelación.*—Ninguna apelación de ninguna orden de la Comisión (excepto según lo que más adelante se dispone), en ningún caso surtirá el efecto de una suspensión (*supersedeas*) de la orden apelada, a menos que la predicha corte correspondiente, en virtud de una orden interlocutoria, diere efecto suspensivo a dicha apelación. Esta orden interlocutoria se dictará después del aviso a la Comisión y demás partes en autos, y de una vista sobre la petición para que se dicte la orden interlocutoria de suspensión de sentencia (*supersedeas*). Al concederse una orden de suspensión de sentencia (*supersedeas*) a petición de una compañía de servicio público en cualquier caso (excepto lo que más adelante se dispone en la presente), la corte podrá, a su juicio, requerir la prestación de una fianza a favor de El Pueblo de Puerto Rico, para beneficio de todas las partes agraviadas, por la suma y en las condiciones que la corte dispusiere en su orden, o puede conceder dicha suspensión (*supersedeas*) en los términos y condiciones, que la corte, a su juicio, prescribiere; *Disponiéndose, sin embargo,* que en todo caso de apelación por una compañía de servicio público contra una orden de la Comisión estableciendo, cambiando, alterando, o en cualquier modo afectando los precios, tipos, tipos mancomunados, o cargos por cualquier servicio, la apelación surtirá el efecto de una suspensión de sentencia (*supersedeas*) al prestarse una fianza a favor de El Pueblo de Puerto Rico, en dicha corte, por dicha compañía de servicio público, para beneficio de todas las partes perjudicadas por la falta de cumplimiento de la orden apelada, durante el período de dicha suspensión de sentencia (*supersedeas*). Dicha fianza será por la cantidad que la corte fijare y con fiadores que deberán ser aprobados por la corte, y bajo condición de reembolsar a todas dichas partes agraviadas cualquier exceso sobre el tipo o cargo fijado por la Comisión y que dicha compañía de servicio público hubiere recibido después de dictada la orden por la Comisión, si dicha orden fuese finalmente confirmada; y podrá también contener las demás condiciones que la corte dispusiere y ordenare."

se pudieran suspender las órdenes de la Comisión cubiertas por el artículo 80. Pero si la parte apelante no solicita un *supersedeas* o si éste no se concede de conformidad con el artículo 80, esto significa solamente que la parte victoriosa puede dar los pasos necesarios para ejecutar la orden no obstante hallarse pendiente la apelación. *Monks* v. *Hemphill*, 203 P.2d 503 (Colo., 1949); *Wetherbee* v. *Lodwick Lumber Co.*, 193 So. 671 (La., 1940); *Stewart* v. *Hurt*, 68 P.2d 726 (Cal., 1937); Pound, *Appellate Procedure in Civil Cases*, págs. 95, 148. *Cf. Travis* v. *Public Utilities Commision of Ohio*, 175 N.E. 586 (Ohio, 1931).

■■ Hemos resuelto que en esta clase de casos el tribunal inferior tiene discreción para dictar una orden de *supersedeas* mientras está pendiente la apelación. *South P. R. Sugar Co.* v. *Corte*, 62 D.P.R. 841; *En el Asunto de la White Star Bus Line*, 53 D.P.R. 390; *White Star Bus Line* v. *Corte*, 52 D.P.R. 837. Empero, bajo el artículo 78 de la Ley de Servicio Público el derecho a apelar es absoluto. De ello se infiere que aun si se hubiese solicitado un *supersedeas* y el mismo se hubiera denegado bajo el artículo 80, la demandada hubiera podido continuar su apelación. Esto fortalece nuestro criterio al efecto de que la falta de una orden de *supersedeas* no menoscaba el derecho de la demandada a proseguir su recurso contra la orden de septiembre 23 de 1947.

■■ La orden de la Comisión de septiembre 23 de 1947 no fué suspendida por una orden interlocutoria del antiguo tribunal de distrito. Los demandantes por tanto estaban en libertad de radicar el actual procedimiento independiente contra la demandada por la cantidad que alegaban se les adeudaba bajo la orden de septiembre 23 de 1947 a pesar del hecho de que una apelación contra esta orden se hallaba aún pendiente. Al no obtener una orden de *supersedeas* en el primer procedimiento, la demandada asumió el riesgo de que el cobro en el presente caso se efectuara antes de que

se declarara nula la orden de septiembre 23 de 1947 en dicho primer procedimiento. Mas como no sucedió eso, la demandada está aún en libertad de insistir aquí en que los demandantes no tienen un buen caso, toda vez que la orden de septiembre 23 de 1947 en que basaron su pleito ha sido declarada nula en el primer procedimiento a virtud de sentencia firme e inapelable. (⁵)

 Sin embargo, nos confrontamos con el problema de que la copia certificada de la sentencia dictada en 20 de noviembre de 1951 por el antiguo tribunal de distrito declarando nula la orden de la Comisión de 23 de septiembre de 1947 no figura en los autos en apelación, sino que ha sido traída por la demandada por primera vez como documento que acompaña a su moción de reconsideración. El razonamiento de la demandada al efecto de que al resolver este caso podemos tomar en consideración la sentencia de 20 de noviembre de 1951, a pesar de no figurar la misma en los autos, es el siguiente: una orden de la Comisión de Servicio Público fijando las tarifas a ser cobradas por una empresa de servicio público es de naturaleza legislativa y tiene fuerza de ley. Por tanto, podemos tomar conocimiento judicial de tal orden al igual que tomaríamos conocimiento judicial de una ley. Conoceríamos judicialmente y aplicaríamos a un caso pendiente en apelación una ley aprobada con posterioridad a la fecha en que el tribunal sentenciador dictó su sentencia. Por igual motivo, debemos tomar conocimiento judicial de

---

(⁵) La sentencia del 20 de noviembre de 1951 del antiguo tribunal de distrito que declara nula la orden de septiembre 23, 1947 en el primer procedimiento, fué dictada después que la demandada había radicado su alegato original ante este Tribunal en el presente caso, pero antes de celebrarse la vista del mismo. La demandada pudo haber radicado ante nos la copia certificada de la sentencia del 20 de noviembre de 1951 antes de que emitiéramos nuestra opinión original en este caso el día 31 de marzo de 1952. En vez de hacerlo así esperó hasta que resolvimos en su contra el caso con respecto a las zafras de 1946 y 1947 por otros fundamentos. Entonces suscitó esta cuestión por vez primera en su moción de reconsideración, radicando con la moción copia certificada de la sentencia de noviembre 20 de 1951.

la sentencia dictada en 20 de noviembre de 1951 y aplicarla en este caso cual si se tratara de una ley aprobada con posterioridad a la fecha en que el tribunal inferior dictó la sentencia en el caso de autos.

Convenimos con dos de los puntos aducidos por la demandada en el argumento anterior. Primero, que cuando como en este caso la Comisión de Servicio Público fija las tarifas que una empresa de servicio público puede cobrar en el futuro, ella ejerce funciones cuasilegislativas. *Prentis* v. *Atlantic Coast Line*, 211 U. S. 210; *Grand Trunk Ry.* v. *Indiana R. R. Comm'n*, 221 U. S. 400; *State Corporation Comm'n* v. *Wichita Gas Co.*, 290 U. S. 561; *Arizona Grocery* v. *Atchison Topeka & Santa Fe Ry.*, 284 U. S. 370; *Oklahoma Packing Co.* v. *Oklahoma Gas & Electric Co.*, 309 U. S. 4; *Mulcahy* v. *Public Service Commission*, 117 P.2d 298 (Utah, 1941).([6]) Por tanto, asumimos, sin resolverlo, que tomaríamos conocimiento judicial de una orden de la Comisión fijando tarifas al igual que tomaríamos conocimiento judicial de una ley de la Legislatura. Artículo 398 del Código de Enjuiciamiento Civil, ed. 1933. Segundo, que de ordinario aplicaríamos a un caso en apelación una ley aprobada con posterioridad a la fecha en que el tribunal inferior dictó su sentencia. *Asoc. Empl. Bayamón Transit* v. *Junta Rel. Trabajo*, 70 D.P.R. 292, 304–07, y casos citados; *Ziffrin, Inc.* v. *United States*, 318 U. S. 73, 79; *Huddleston* v. *Dwyer*, 322 U. S. 232; Anotación, 111 A.L.R. 1317, 1326.

La dificultad estriba en que en este caso no se nos pide que tomemos conocimiento judicial de la actuación de la Comisión al fijar la tarifa. Más bien, por primera vez en reconsideración, la demandada nos pide que tomemos conocimiento judicial de la sentencia dictada por el antiguo tribunal de distrito que declaró nula determinada tarifa. La

---

([6]) Una cuestión un tanto diferente estaba envuelta en el caso de *Godreau & Co.* v. *Com. Servicio Público*, 71 D.P.R. 649, en el cual resolvimos que los reglamentos generales de la Comisión son de naturaleza legislativa.

función de los tribunales al revisar tal orden es estrictamente judicial. *Godreau & Co.* v. *Com. Servicio Público,* 71 D.P.R. 649, 655; *Commission* v. *Havemeyer,* 296 U. S. 506, 511, 518. El tomar conocimiento judicial de tal sentencia puede ser, por tanto, algo muy distinto a tomar conocimiento judicial de la actuación cuasilegislativa de la Comisión al aprobar la tarifa. *Cf. State Corporation Comm'n* v. *Wichita Gas Co.,* supra, pág. 569; *Arizona Grocery* v. *Atchison Topeka & Santa Fe,* supra, pág. 389; *Napa Valley Co.* v. *R. R. Comm.,* 251 U. S. 366; *Southern Pac. Co.* v. *Van Hoosear,* 72 F.2d 903 (C.A. 9, 1934). Por consiguiente, si llegáramos al convencimiento de que no podemos tomar conocimiento judicial de la sentencia de 20 de noviembre de 1951, a lo sumo quizás dejaríamos sin efecto la sentencia que está ante nos y devolveríamos el caso al tribunal a quo con instrucciones de que dictara sentencia en favor de la demandada al sometérsele copia certificada de la referida sentencia de 20 de noviembre de 1951. Véase *Cruz* v. *Sucn. González,* 72 D.P.R. 308. Sin embargo, el resultado a que llegamos sobre la siguiente contención hace innecesario determinar (1) si debemos tomar conocimiento judicial de la sentencia de 20 de noviembre de 1951 que anuló la orden fijando la tarifa, o (2) asumiendo que no tomáramos semejante conocimiento judicial, si deberíamos devolver el caso al tribunal inferior con el propósito de permitir que se ofrezca la sentencia en evidencia.

Pasemos a la contención final de la demandada, planteada asimismo por primera vez en reconsideración. Ella sostiene que en vista de la derogación de la Ley núm. 221 de 1942 por la núm. 426 de 1951 ((1) pág. 1139), no se puede iniciar o finalizar en el futuro ningún procedimiento para fijar una tarifa permanente; que la validez de la orden de 23 de septiembre de 1947 fijando una tarifa provisional está predicada en que esté pendiente un procedimiento sobre

fijación de tarifa permanente; que al eliminarse por la Ley núm. 426 la posibilidad de fijarse en el futuro una tarifa permanente, se elimina la base estatutaria en que descansa la tarifa permanente; y que los demandantes no pueden tener éxito en este pleito en cobro de dinero una vez que la base estatutaria para la fijación de tarifa provisional ha dejado de existir.

Por la Ley núm. 221 las centrales azucareras se convirtieron en empresas de servicio público y en armonía con lo dispuesto por el artículo 33 (a) de la misma, podían cobrar por sus servicios las tarifas fijadas por la Comisión, las que proporcionarían a cada central un beneficio justo sobre el justo valor de la propiedad dedicada a dicho servicio. *Cía. Azucarera Toa* v. *Com. Serv. Público*, 71 D.P.R. 212, 215–17. También se autorizó a la Comisión a fijar tarifas provisionales a ser cobradas por las centrales azucareras como en el caso de las empresas de servicio público clásicas. Pero por estatuto y quizás de acuerdo con la cláusula sobre debido proceso de ley, no podían fijarse tales tarifas provisionales a no ser que estuviere pendiente un procedimiento sobre fijación de tarifas permanentes. *Cía. Azucarera Toa* v. *Com. Servicio Público*, supra; Ley núm. 12 de 1941 ( (1) pág. 243), que adicionó el artículo 24 (a) a la Ley de Servicio Público.

La Ley núm. 221 fué derogada. Ha sido suplantada por la núm. 426 de 1951 bajo la cual las centrales azucareras cobran por sus servicios basados en las fórmulas establecidas en esa ley y no de acuerdo con tarifas fijadas individualmente para cada central como empresa de servicio público de acuerdo con la fórmula establecida en el artículo 33 (a) de la Ley núm. 221. Por consiguiente, bajo el estado actual de la ley ya no es posible iniciar o concluir tal procedimiento individual sobre fijación de tarifas permanentes. Y no hay evidencia en los autos de que la Comisión jamás fijará a la

demandada una tarifa permanente. (⁷) El permitir que bajo estas circunstancias se prosiga un pleito basado en la tarifa provisional equivaldría en efecto a convertir la tarifa provisional en una permanente para las zafras en cuestión. Según indicamos en el caso de *Toa*, tal resultado podría ser inconstitucional y ciertamente no fué ésa la intención de la Legislatura.

Conforme ya hemos indicado, podemos aplicar a este caso un estatuto aprobado con posterioridad a la fecha en que se dictó la sentencia por el tribunal a quo. La aprobación de la Ley núm. 426 de 1951 con posterioridad al 17 de octubre de 1950, fecha en que se dictó la sentencia por el antiguo tribunal de distrito en este caso, ha eliminado toda posibilidad de que jamás se fije para la demandada una tarifa permanente. La validez de la orden fijando una tarifa provisional tiene por condición no sólo el que se halle pendiente un procedimiento sobre fijación de tarifa permanente, sino también que continúe en vigor el estatuto que autoriza la adopción de dicha tarifa. Por tanto, dada la derogación de la Ley núm. 221, no puede exigirse de la demandada que cumpla ningunas obligaciones monetarias establecidas por la orden fijando la tarifa provisional.

Tenemos presente que el artículo 39 de la Ley núm. 426 lee en parte así: *"Disponiéndose, además*, que la derogación de la Ley Núm. 221 de 12 de mayo de 1942, no perjudicará derechos, causas de acciones, pleitos, apelaciones, penalidades, causas y procedimientos, incoados o por incoarse, que hayan surgido al amparo de dicha Ley núm. 221 de 1942, sus reglamentos y/o las órdenes dictadas por la Comisión de Servicio Público de Puerto Rico, hasta la fecha en que efectivamente quede derogada dicha ley, los cuales derechos, causas de acciones, pleitos, apelaciones, penalidades y casos

---

(⁷) En *Cía. Azucarera Toa* v. *Com. Servicio Público*, 71 D.P.R. 212, dijimos a las págs. 223–24: "Durante la vista también se indicó que por razones económicas la Comisión no ha podido iniciar los procedimientos para fijar las tarifas permanentes."

948

y procedimientos subsistirán y podrán exigirse, incoarse o seguirse tramitando como si la Ley núm. 221 de 1942 no hubiese sido derogada.".(8)

Es difícil determinar el verdadero alcance del contexto de este Disponiéndose. Pero la Ley núm. 426 fué obviamente aprobada a la luz de nuestras decisiones en los casos de *Toa* y *Godreau*. Y en el de *Toa* claramente indicamos que una tarifa provisional no era válida si no se hallaba pendiente un procedimiento sobre fijación de tarifa permanente. En su consecuencia, no podemos resolver que por el artículo 39 de la Ley núm. 426 la Legislatura tuvo la intención de que pleitos como el presente, basados en órdenes de la Comisión fijando tarifas provisionales, deben seguir pendientes cuando la base estatutaria y tal vez constitucional de tales pleitos fué eliminada por la propia Ley núm. 426. Nos damos cuenta de que probablemente muchas, de no ser la mayoría, de las reclamaciones pendientes bajo la Ley 221 surgen de órdenes fijando tarifas provisionales. Mas por las razones indicadas, no podemos resolver que tales reclamaciones pueden aún ser exigidas a pesar del hecho de que debido a una ley posterior ya no existe ninguna perspectiva de que se fijen tarifas permanentes individuales de acuerdo con la Ley núm. 221. *Cf. United States* v. *Chambers*, 291 U.S. 217; Anotación, 89 A.L.R. 1514.

No hemos pasado por alto el argumento de que cualquier cuestión relativa a la validez de la orden de la Comisión fijando una tarifa provisional debe de ordinario determinarse mediante una apelación contra esa orden, de conformidad con el artículo 78 de la Ley de Servicio Público, y no por vía de defensa en un pleito como el presente en cobro de dinero instado de acuerdo con el artículo 27 de la

---

(8) Dadas las disposiciones específicas del artículo 39, el artículo 386 del Código Político no desempeña papel de clase alguna en este caso.

Ley núm. 221.(⁹) Sin embargo, somos del criterio que esta regla no prevalece cuando como ocurre en el presente caso una ley posterior ha privado a la orden de la Comisión de cualquier posible base legal.

*Por las razones expuestas, se dejan sin efecto nuestra opinión y sentencia de 31 de marzo de 1952. En su lugar, la sentencia del antiguo tribunal de distrito en favor de los demandantes será revocada y se dictará otra en favor de la demandada.*

Los Jueces Asociados Señores Negrón Fernández, Ortiz y Sifre no intervinieron.

---

(⁹) Como ya hemos dicho, la demandada nos ha sometido con su moción de reconsideración copia certificada de la sentencia de noviembre 20 de 1951 indicativa de que la demandada sí apeló de la orden dictada por la Comisión en 23 de septiembre de 1947 fijando una tarifa provisional y que el antiguo tribunal de distrito dictó una sentencia que se ha convertido en firme e inapelable, declarando nula la orden fijando la tarifa provisional. Véase el escolio 3. Por las razones expuestas en el texto de la opinión, hemos resuelto este caso sin tomar en consideración la sentencia de noviembre 20 de 1951.