SOUTH PORTO RICO SUGAR COMPANY, apelante, *v.* COMISIÓN DE SERVICIO PÚBLICO DE PUERTO RICO y ENRIQUE LASSISE, apelados.

Número 11132.

*Sometido:* 6 de abril de 1954.   *Resuelto:* 7 de julio de 1954.

*James R. Beverley, R. Castro Fernández y Francisco Castro Amy,* abogados de la apelante; *Nellie Ortiz Torres, M. B. Carrasquillo y Ricardo Jordán,* abogados de la apelada Comisión de

Servicio Público; *Pablo Defendini,* abogado del apelado Lassise.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del Tribunal.

Para la mejor comprensión de este caso, consideramos pertinente hacer, en primer lugar, una reseña cronológica de cuanto ocurrió en él hasta su llegada a este Tribunal.

En primero de agosto de 1950 Enrique Lassise, por sí y en representación y para beneficio de otros colonos de la Central Guánica presentó ante la Comisión de Servicio Público de Puerto Rico [1] una querella en la que alegó en síntesis que la Comisión promulgó unas tarifas aplicables a la Compañía querellada para la zafra de 1946 y subsiguientes y que por decisión de este Tribunal Supremo dichas tarifas fueron declaradas nulas e inexistentes; que la querellada prestó servicios de molienda de cañas a sus colonos a base de tarifas de su propia determinación; que las cobradas por ella durante los años 1946, 1947, 1948, 1949 y 1950 fueron injustas e irrazonables, realizando la querellada mediante el cobro de tales tarifas ganancias muy en exceso de las permitidas por la ley; que la querellada solamente puede cobrar las tarifas aprobadas por la Comisión y que por disposición de la Ley 221 de 1942 ((1) pág. 1177) la Comisión está obligada a ejercitar sus poderes de intervención para que las tarifas cobradas por toda compañía azucarera sean justas y razonables. Se suplica que previo los trámites legales la Comisión ordene a la querellada que resarza a sus colonos de las tarifas excesivas que por la prestación de sus servicios de molienda les cobró durante los años en cuestión.

A esa querella la querellada interpuso una moción para desestimar, fundada en que la Comisión no ha determinado el justo valor de las propiedades de la querellada ni ha fijado el por ciento de beneficio razonable que ha de percibir ella sobre su capital invertido; y que suponiendo que la querellada haya

---

[1] En adelante hablaremos meramente de la "Comisión."

estado cobrando tarifas injustas o irrazonables, no procede se le condene a resarcir a los colonos el exceso entre las tarifas archivadas por ella en la Comisión y las que previa audiencia la Comisión pudiere fijar como razonables. En 28 de noviembre de 1950 la Comisión declaró sin lugar esa moción. Se basó para ello en los fundamentos que figuraban en la resolución por ella dictada 14 días antes en el caso de *Asociación de Colonos de Caña de Yabucoa v. Antonio Roig Sucrs.* Una moción de reconsideración de la querellada fué declarada sin lugar por la Comisión el 2 de enero de 1951. Contestó entonces la querellada negando las alegaciones esenciales de la querella y levantando ciertas defensas especiales.

Así las cosas, en 9 de agosto de 1951 la Comisión dictó una resolución en la cual hizo constar que el día 13 de mayo de 1951 el Gobernador de Puerto Rico impartió su aprobación a la Ley núm. 426 titulada "Ley Azucarera de Puerto Rico" que expresamente deroga la núm. 221 de 12 de mayo de 1942; que "consideradas las circunstancias expresadas, *por la presente ordena el archivo de los casos pendientes ante la Comisión relacionados con la antes mencionada legislación y de este caso en particular, por considerar que la resolución que pudiera en su día recaer, resultaría académica,*" y que "no obstante lo anteriormente dispuesto, cualquier parte interesada en promover cualquier cuestión de hecho o de derecho podrá comparecer ante la Comisión para hacer las alegaciones pertinentes dentro del término de quince (15) días a partir de la notificación de esta Resolución." (Bastardillas nuestras.) Seis días más tarde el querellante radicó una moción fundamentada suplicando de la Comisión que "deje sin efecto su resolución dictada en este caso con fecha 9 de agosto de 1951 y ordene que el caso quede abierto para ulteriores procedimientos a fin de que siga su curso y se resuelva por sus méritos." ([2])

(2) De los autos no aparece que esa moción fuera notificada a la querellada.

En 28 de febrero de 1952 compareció el querellante nueva-
mente ante la Comisión con una "moción sobre suministro de
datos informativos," en la cual, luego de hacer constar que el
caso ha estado pendiente desde enero de 1951 y que no obs-
tante la derogación de la Ley 221 de 1942 quedaron salvadas
todas las acciones promovidas o que pudieran promoverse bajo
dicha ley anterior, alega que para poder determinar las cues-
tiones de hechos envueltas en el caso y proceder a la vista del
mismo en su fondo, es necesario que la querellada suministre
los siguientes datos, según aparecen de sus libros y récords
oficiales, correspondientes a cada uno de los años antes mencio-
nados: (1) informe final de laboratorio sobre las resultas
de la molienda del año; (2) activo fijo de la empresa que-
rellada en relación con las operaciones de molienda; (3) gas-
tos de operación y depreciación habida en el valor de la planta
física y sus dependencias, según los libros de la empresa;
(4) resultas económicas de la fábrica; y (5) resumen, ha-
ciendo constar el beneficio industrial, la reserva o desembolsos
por concepto de contribuciones sobre ingresos, y el beneficio
líquido.[3] En primero de julio de 1952 la Comisión dictó
una orden declarando con lugar la anterior moción y requi-
riendo a la querellada para que dentro de un término no mayor
de 30 días suministre [a la Comisión] todos los datos solici-
tados por el querellante en su anterior moción. En contes-
tación a esa orden, la querellada alegó por escrito que la
misma se había dictado sin previa audiencia a la querellada
y sin jurisdicción, toda vez que el caso ya había sido archivado
por resolución de 9 de agosto de 1951 que ya era firme e
inapelable; que toda la información interesada por la Comi-
sión aparece de los informes anuales y de los informes finales
de laboratorio que la querellada ha venido radicando en la
secretaría de la Comisión al terminar cada zafra; y que cual-
quier información en relación con los años 1946, 1947 y 1948
sería inútil, por haber transcurrido más de dos años desde que

---

[3] Los apartados 3 y 4 de la moción también aparecen subdivididos.

terminaron las mismas. En esa contestación la querellada solicita se deje sin efecto la orden de primero de julio de 1952. Nada hizo la Comisión en respuesta a esa contestación de la querella, mas en 27 de octubre de 1952 el querellante solicitó se obligara a la querellada a dar cumplimiento a la orden de primero de julio de 1952. Por escrito de 4 de febrero de 1953 la querellada se opuso a la reapertura del caso toda vez que el mismo "está muy bien archivado como resultado de la derogación de la referida Ley 221 de 1942 por el art. 39 de la Ley Azucarera de Puerto Rico(⁴) . . . según interpretado por el Hon. Tribunal Supremo de Puerto Rico en el caso de *Molini v. Sociedad Mario Mercado e Hijos,* opinión en reconsideración de fecha 11 de octubre de 1952." (73 D.P.R. 937.)

En 17 de marzo de 1953 la Comisión dictó una orden, en la que después de hacer constar que en 5 de febrero de 1953 fué celebrada una audiencia en relación con los méritos de su orden de primero de julio de 1952, indica que consideradas las objeciones levantadas por la querellada "declara las mismas sin lugar y por ésta ratifica su orden de primero de julio de 1952 y asimismo ordena a la querellada que proceda a dar cumplimiento a dicha orden dentro de un término de treinta (30) días a partir de la fecha de la notificación de esta orden."

En 16 de abril de 1953 (sic) la querellada apeló ante el Tribunal Superior de Puerto Rico, Sala de San Juan, contra las órdenes dictadas por la Comisión en primero de julio de 1952 y 17 de marzo de 1953. La Comisión solicitó de dicho Tribunal que desestimara la apelación interpuesta (1) porque

---

(⁴) El art. 39 de la Ley núm. 426 de 13 de mayo de 1951 (pág. 1139, conocida por "Ley Azucarera de Puerto Rico") preceptúa en su *disponiéndose,* final "que la derogación de la Ley núm. 221 de 12 de mayo de 1942, no perjudicará derechos, causas de acciones, pleitos, apelaciones, penalidades, causas y procedimientos, incoados o por incoarse, que hayan surgido al amparo de dicha Ley núm. 221 de 1942, sus reglamentos y/o las órdenes dictadas por la Comisión de Servicio Público de Puerto Rico, hasta la fecha en que efectivamente quede derogada dicha ley, los cuales derechos, causas de acciones, pleitos, apelaciones, penalidades y casos y procedimientos subsistirán y podrán exigirse, incoarse o seguirse tramitando como si la Ley núm. 221 de 1942 no hubiese sido derogada."

esas órdenes no son apelables; (2) porque el recurso es enteramente frívolo; y (3) porque la apelante no ha perfeccionado su recurso a tenor con lo dispuesto en el art. 79 de la Ley de Servicio Público. En respuesta a esa moción, el tribunal a quo dictó resolución en 31 de agosto de 1953, haciendo constar entre otras cosas "que la resolución y la orden que la parte apelante pretende que se revisen no pueden ser traídas en apelación a ese efecto hasta que el caso quede finalmente resuelto en su fondo por la Comisión de Servicio Público. Tanto la resolución como la orden aquí apeladas constituyen actuaciones incidentales de la Comisión de Servicio Público en un procedimiento que se está ventilando ante ella, y sólo pueden ser objeto de revisión al interponerse un recurso apelativo contra la resolución final que pueda recaer en el caso después de verse en sus méritos." Fundado en ese razonamiento y en otros que también figuran en su resolución, el tribunal a quo declaró con lugar la moción de desestimación de la apelada y ordenó que el caso fuera devuelto a la Comisión de Servicio Público para seguir sus trámites de acuerdo con la Ley.(5)

De la resolución así dictada por el Tribunal Superior la querellante apeló para ante nos. Sostiene ahora que el Tribunal Superior erró: (1) al desestimar la apelación y devolver el caso a la Comisión; (2) al decidir que la Comisión no tenía facultad para ordenar el archivo del caso; (3) al reabrir el caso después de seis meses 19 días de archivado; (4) al reabrir el caso para verlo en su fondo y determinar el valor de las propiedades de la apelante, el por ciento de beneficio razonable que hubiese tenido derecho a percibir sobre su capital invertido y las tarifas que hubiese tenido derecho a

---

(5) Si el tribunal sentenciador era de opinión que las órdenes de primero de julio de 1952 y 17 de marzo de 1953 no eran apelables, por ser actuaciones incidentales de la Comisión, y por ende que no tenía jurisdicción para conocer del recurso, no debió entrar a discutir otras cuestiones suscitadas por las partes que iban a los méritos del mismo. *Román* v. *Figueroa*, 73 D.P.R. 875, 880; *Autoridad Sobre Hogares* v. *Sagastivelza*, 71 D.P.R. 436, 439.

cobrar durante los años 1946 a 1950 inclusives; y (5) al no resolver que las reclamaciones por los años 1946, 1947 y 1948 estaban prescritas al radicarse la querella.

■■ El primer error señalado fué claramente cometido. Si bien es cierto que de acuerdo con el art. 78 de la Ley 70 de 6 de diciembre de 1917 (volumen II, págs. 433, 527) "dentro de los 30 días después de archivada *cualquier declaración o decisión* por la Comisión o después de la fecha de haber sido notificada *cualquier orden,* a menos que estuviere pendiente una solicitud de nueva audiencia, y entonces dentro de los 30 días de haber sido denegada tal solicitud o de haberse dictado una orden, modificando, enmendando, rescindiendo o confirmando la declaración, decisión u orden original, *cualquiera de las partes en el procedimiento afectada por ella, podrá apelar para ante la Corte de Distrito de San Juan, Sección Primera,"* (⁶) (bastardillas nuestras) sin embargo, no toda declaración, decisión u orden de la Comisión es apelable. *Baetjer* v. *Corte,* .56 D.P.R. 596, 599; *Fed. Power Comm'n* v. *Edison Co.,* 304 U. S. 375; *Mississippi Power & Light Co.* v. *Federal Power Comm'n,* 131 F.2d 148; *Newport Electric Corporation* v. *Federal Power Comm'n,* 97 F.2d 580; *McPheeters* v. *Board of Medical Examiners,* 187 P.2d 116; 42 Am. Jur., pág. 578, sec. 196. Para que sea apelable no deberá tratarse de una declaración, decisión u orden incidental o de índole procesal, sino de una que ponga fin a la controversia entre las partes. Las de primero de julio de 1952 y 17 de marzo de 1953 no fueron órdenes incidentales o de índole procesal. Ellas fueron fundamentalmente órdenes que tuvieron el alcance de reabrir un caso ya archivado, es decir, de dejar sin efecto una resolución que puso fin a la controversia. Se recordará que por resolución de 9 de agosto de 1951 la Comisión ordenó el archivo de los casos pendientes relacionados con la Ley 221 de 1942, según la misma fué derogada por la núm.

---

(⁶) Véanse la Ley 432 de 15 de mayo de 1950 (pág. 1127) y la Ley núm. 11 de 24 de julio de 1952 (Ses. extr., pág. 31).

426 de 1951, y que asimismo ordenó el archivo *"de este caso en particular*, por considerar que la resolución que pudiera en su día recaer, resultaría académica." (Bastardillas nuestras.) Si bien en dicha resolución la Comisión concedió a cualquier parte interesada un término de 15 días para promover cualquier cuestión de hecho o de derecho, tal resolución tenía por objetivo poner punto final a la cuestión que ante sí tenía la Comisión. Aunque el querellante compareció dentro del citado término en solicitud de que se dejara sin efecto esa resolución y más tarde pidió que se le suministraran ciertos datos informativos, a lo que accedió la Comisión por orden de primero de julio de 1952—que luego fué ratificada por la de 17 de marzo de 1953—esas dos órdenes posteriores a la resolución de 9 de agosto de 1951 abrogaron el archivo del caso previamente decretado. La tantas veces citada resolución de 9 de agosto equivalía a una adjudicación final y como tal la misma era apelable por cualquier parte que se considerara perjudicada. Siendo ello así, las órdenes posteriores dejando sin efecto tal resolución equivalieron a adjudicaciones finales, adversas a la querellante. Eran por tanto apelables. Así lo entendió este Tribunal al dictar su resolución en 2 de noviembre de 1953 declarando no haber lugar a la desestimación interesada por la parte apelada, fundada en que dichas órdenes no eran apelables, en que el caso era frívolo y en que el mismo resultaba ilusorio.

█ El cuarto error señalado también fué cometido. Como ya hemos indicado, en 28 de noviembre de 1950, la Comisión declaró sin lugar una moción para desestimar presentada por la querellada. La Comisión se fundó entre otras cosas en que *"al resolver este caso ha de determinarse el justo valor de las propiedades de la querellada, así como el beneficio razonable que ésta tiene derecho a devengar,"* y que "si la Comisión llegare a la conclusión de que el beneficio obtenido por la querellada ha sido excesivo, entonces procederá el resarcimiento a favor de los colonos." La Comisión no puede determinar tal cosa hoy en día. Innegable es que a virtud

del *disponiéndose* final que figura en el art. 39 de la Ley núm. 426 las "causas de acciones, pleitos, apelaciones, penalidades y casos y procedimientos subsistirán y podrán exigirse, incoarse o seguirse tramitando como si la Ley núm. 221 de 1942 no hubiese sido derogada." Empero, en *Molini* v. *Soc. Mario Mercado e Hijos*, 73 D.P.R. 937, se radicó ante la Comisión una querella, según la cual durante las zafras de 1945 a 1947 la demandada no pagó a los demandantes por el arrastre y arrimo de sus cañas de conformidad con la tarifa provisional fijada por la Comisión. Luego de celebrarse una vista, la Comisión dictó una orden requiriendo a la compañía para que pagara a los demandantes la diferencia. La compañía no cumplió con esa orden y los demandantes entonces entablaron su demanda y obtuvieron sentencia contra la demandada en el antiguo Tribunal de Distrito. En el curso de la opinión emitida en reconsideración dijimos a la pág. 946 que: "La Ley núm. 221 fué derogada. Ha sido suplantada por la núm. 426 de 1951 bajo la cual las centrales azucareras cobran por sus servicios basados en las fórmulas establecidas en esa ley y no de acuerdo con tarifas fijadas individualmente para cada central como empresa de servicio público de acuerdo con la fórmula establecida en el art. 33 (*a*) de la Ley núm. 221. Por consiguiente, bajo el estado actual de la ley ya no es posible iniciar o concluir tal procedimiento individual sobre fijación de tarifas permanentes." Aunque en este caso no se trata de la fijación de tarifas individuales, provisionales o permanentes, para resolver el mismo, la Comisión tendría que determinar el valor de las propiedades de la querellada y el beneficio razonable que ésta tendría derecho a devengar, y una vez determinado eso ordenaría a la querellada el resarcimiento de la cantidad que pudiera haberse cobrado en exceso. Así lo admite la propia Comisión. Véase su resolución de 28 de noviembre de 1950 antes citada. Por tanto, dada la derogación de la Ley 221 y el alcance de la Ley 426 de 1951, supra, la Comisión carece de potestad al presente para hacer tal cosa.

La continuación del pleito resultaría, en su consecuencia, ilusoria.

Habiéndose cometido los dos errores ya discutidos es innecesario considerar los señalados bajo los números 2, 3 y 5.

*Debe revocarse la resolución apelada y ordenarse el archivo de la querella.*

Los Jueces Asociados Sres. Sifre y Belaval no intervinieron.